| | |
|---|---|
| WEIL, GOTSHAL & MANGES LLP<br>Stephen Karotkin (*pro hac vice*)<br>(stephen.karotkin@weil.com)<br>Ray C. Schrock, P.C. (*pro hac vice*)<br>(ray.schrock@weil.com)<br>Jessica Liou (*pro hac vice*)<br>(jessica.liou@weil.com)<br>767 Fifth Avenue<br>New York, NY 10153-0119<br>Tel: 212 310 8000<br>Fax: 212 310 8007 | CRAVATH, SWAINE & MOORE LLP<br>Paul H. Zumbro (*pro hac vice*)<br>(pzumbro@cravath.com)<br>Kevin J. Orsini (*pro hac vice*)<br>(korsini@cravath.com)<br>Omid H. Nasab (*pro hac vice*)<br>(onasab@cravath.com)<br>Worldwide Plaza<br>825 Eighth Avenue<br>New York, NY 10019<br>Tel: 212 474 1000<br>Fax: 212 474 3700 |

KELLER & BENVENUTTI LLP
Tobias S. Keller (#151445)
(tkeller@kellerbenvenutti.com)
Jane Kim (#298192)
(jkim@kellerbenvenutti.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel: 415 496 6723
Fax: 650 636 9251

*Attorneys for Debtors and Debtors in Possession*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **In re:**<br><br>**PG&E CORPORATION**<br><br>-and-<br><br>**PACIFIC GAS AND ELECTRIC COMPANY,**<br>                             Debtors. | Case No.<br>No. 19-cv-05257-JD<br><br>**DEBTORS' STATEMENT REGARDING CLAIMS NOTICING PROCEDURES**<br><br>Bankr. Case No. 19-30088-DM |

PG&E Corporation and Pacific Gas and Electric Company (together, "**PG&E**" or the "**Debtors**"), hereby submit this statement to provide the Court with additional information on the court-approved noticing procedures carried out by the Debtors to notify potential claimants of the October 21, 2019 deadline (the "**Bar Date**") and related procedures established by the Bankruptcy Court for filing claims, in light of the concerns expressed by the Court at the estimation proceeding status conference earlier this week.

DEBTORS' STATEMENT REGARDING CLAIMS NOTICING PROCEDURES – Case No. 19-cv-05257-JD

The Debtors' efforts to notify potential wildfire claimants were robust and designed to maximize both awareness and participation. As set forth below in more detail, the Debtors' noticing procedures were approved by the Bankruptcy Court after a hearing and following extensive briefing by multiple parties, including the TCC, as the court-appointed fiduciary for the wildfire claimants, as well as the Ad Hoc Group of Subrogation Claim Holders (the "**Ad Hoc Subrogation Group**"), which represents the interests of insurance companies that have paid out several billion dollars in wildfire related claims. The proof of claim form adopted by the Debtors for wildfire claimants was created and approved by the TCC, and the wildfire subrogation claim form was adopted with the agreement of the Ad Hoc Subrogation Group.

More important than the forms, though, are the procedures adopted for the particular circumstances of the PG&E chapter 11 cases. The court-approved noticing procedures have been unprecedented in their breadth and scope, going far beyond the requirements of notice in a chapter 11 case. Indeed, the Bankruptcy Court agreed that the Debtors' procedures are among the most robust ever. (June 26, 2019 Hr'g Tr. at 20:14-16.[1]) The procedures consisted not only of traditional noticing methods and procedures, such as mailed and publication notices, but also included a broad social media campaign and extensive non-traditional outreach, including the establishment of claims service centers in the affected areas of California, in-person community outreach to over 230 organizations in the affected areas, and in-person, "boots-on-the-ground" outreach to FEMA temporary housing sites and other housing locations for individuals displaced by the fires. PG&E recognized that this was an unprecedented situation, and went to unprecedented lengths to get the word out.[2]

### A. The Bar Date Motion

The Debtors filed their Bar Date Motion in the Bankruptcy Court on May 1, 2019. (Bankr. Dkt. No. 1784.) The motion sought to establish a deadline for filing claims, to establish the form and manner of notice of the Bar Date (the "**Bar Date Notice**"), and to establish

---

[1] "Mr. Karotkin: This is the most robust plan that has ever been done."
   "The Court: It certainly seems to be that way."
[2] While this is not a matter merely of dollars and cents, for the Court's information, the Debtors have spent more than $11 million on Bar Date noticing efforts.

procedures for providing notice of the Bar Date to individuals and entities who may have claims (the "**Noticing Procedures**").

The Bar Date Motion, including the Noticing Procedures proposed in the motion, was the subject of extensive briefing. Between May 16 and June 24, 2019, approximately 13 parties filed briefs setting forth their positions on the Bar Date Motion.[3] In addition, on May 31, 2019, the TCC filed its own competing bar date motion. (Bankr. Dkt. No. 2297.) The TCC's motion itself was subject to extensive additional briefing.[4] Prior to the Bankruptcy Court's hearing on the Bar Date Motion, the Debtors supplemented the proposed Noticing Procedures in response to concerns expressed by various parties, including the TCC.

On June 26, 2019, the Bankruptcy Court held a hearing to consider both the Debtors' Bar Date Motion and the TCC's competing motion. The hearing lasted more than three and a half hours. (Bankr. Dkt. No. 2768.) Following the hearing, the Bankruptcy Court entered an order (the "**Bar Date Order**") granting the Debtors' Bar Date Motion, denying the TCC's bar date motion, and approving the Debtors' Noticing Procedures. (Bankr. Dkt. 2806.)

Since the entry of the Bar Date Order, the Debtors have carried out the Noticing Procedures in accordance with the Bankruptcy Court's order. The Debtors have been assisted in these efforts by Prime Clerk, the court-appointed noticing agent for the PG&E chapter 11 cases.[5]

---

[3] *See* Bankr. Dkt. Nos. 2043 (Ad Hoc Subrogation Group), 2238 (State Farm Mutual Automobile Insurance Company), 2239 (Public Entities Impacted by the Wildfires), 2240 (David Herndon et. al as Interested Parties), 2242 (Fire Victims Creditors), 2248 (Singleton Law Firm Fire Victim Claimants), 2256 (The Baupost Group, L.L.C.), 2306 (TCC), 2307 (California Department of Toxic Substances Control), 2308 (Official Committee of Unsecured Creditors), 2316 (U.S. Trustee), 2321 (Sonoma Clean Power Authority), 2324 (Northern California Power Agency), 2326 (City of San Jose), 2346 (The County of Placer), 2453 (Cazadero Community Services District), 2621 (TCC), and 2739 (Lieff Cabraser Wildfire Class Claimants).

[4] *See* Bankr. Dkt. Nos. 2603 (State Farm Mutual Automobile Insurance Company), 2627 (California Department of Toxic Substances Control), 2633 (David Herndon et. al as Interested Parties), 2636 (Debtors and Debtors in Possession), 2646 (Debtors and Debtors in Possession), 2650 (Official Committee of Unsecured Creditors), 2654 (Public Entities Impacted by the Wildfires).

[5] Prime Clerk, the Court-appointed noticing agent in these chapter 11 Cases, has significant experience in a multitude of large and complex cases, including extensive experience serving as claims and noticing agent in chapter 11 cases involving mass tort and class action claims. Prime Clerk's noticing efforts are overseen by Jeanne C. Finegan, APR, a nationally recognized expert in the field of noticing in both bankruptcy and class actions.

**B.     The Court-Approved Noticing Procedures**

The court-approved Noticing Procedures consist of multiple components. As detailed below, those components included traditional forms of mailed and publication notices. They also, however included an extensive campaign of non-traditional notice, including a "boots on the ground" approach to community outreach with in-person visits to FEMA temporary housing sites and other locations to distribute information and answer questions from potential claimants.

The components of the court-approved Noticing Procedures were as follows:

**Mailed Notice.** The Debtors conducted a broad mailed notice campaign, including mailing notice directly to approximately 50,000 known wildfire claimants and an additional 17,000 potential wildfire claimants sourced from proprietary satellite data information provided by a third party satellite data expert retained by the Debtors. In addition, the Debtors mailed simple, plain-English notices individually to each of their 6.2 million customer accounts, which, to state the obvious, included many wildfire claimants. These mailings were in addition to the mailings that are traditionally made in chapter 11 cases, including mailings to:

- 150,000 Known and Potential Creditors and Contract Counterparties
- 225 Subrogation Claimants
- 11,300 Noteholders
- 111,000 Equity Holders; and
- 1,352 Brokerage Nominees.

**Publication Noticing.** The Bar Date Notice was published broadly in national and local newspapers. The publication notice campaign included publication in three nationally distributed magazines and two nationally circulated newspapers. In addition, the Bar Date Notice was published three separate times in 27 local newspapers, including The Los Angeles Times, San Francisco Chronicle, The Bakersfield Californian, The Fresno Bee, The Modesto Bee, The Sacramento Bee, The Santa Rosa Press Democrat, The San Jose Mercury News, The East Bay Times, The Stockton Record, The Paradise Post, and The Chico Enterprise-Record.

**Online Advertising.** In addition, the Debtors took out online advertising in English and Spanish that served more than 45 million impressions. The online advertising was targeted based on geography and target audiences' characteristics, such as having individuals that had recently moved or previously lived in California. The Debtors also provided online notice through advanced digital tactics such as keyword/term and contextual advertising, audience data from national change of address registries, and geographical targeting to residents in the areas of California affected by the wildfires. Banner ads were broadcast on approximately 4,000 web sites and included displays on multiple devices, including desktop, tablet and mobile devices.

**Community Outreach.** In addition to print and online advertising, the Debtors conducted extensive community outreach efforts throughout Northern California. Prime Clerk personnel acting at the Debtors' direction personally contacted more than 230 community organizations, religious organizations, business associations, school districts, charitable foundations and disaster relief groups, among many others. Prime Clerk provided these organizations with a plain language informational flyer in full color, printed in in English, Spanish, Chinese, Vietnamese and Tagalog, to distribute to their members or the communities they serve. In addition, representatives of the Debtors visited FEMA housing sites and other temporary housing locations in-person to distribute flyers in English and Spanish and to answer questions. Debtors' representatives also attended the Paradise Revival Festival, which was held on October 12, specifically to help victims of the wildfires understand claims filing and Bar Date issues. The Debtors staffed a table on "Recovery Row" from 11:00 a.m. to 8:00 p.m. and distributed full-color flyers in English and Spanish.

**Claim Service Centers.** Prime Clerk established and staffed claims service centers at PG&E's billing locations in Chico, Marysville, Oroville, Redding, Santa Rosa, and Napa. Nearly 17,000 claims were filed at those centers.

**Targeted Social Media.** Prime Clerk carried out an extensive advertising campaign on social media, resulting in more than 375 million social media impressions. Facebook and Instagram advertisements were targeted to potential wildfire claimants by, among

other things, (a) targeting people who engaged with, talked about or shared content regarding the fires; (b) targeting FEMA housing locations geographically and to Paradise evacuation zone pages; (c) targeting followers of pages dedicated to survivors of the wildfires; and (d) targeting followers of awareness and support groups, community groups and other similar groups likely to have followers who are potential wildfire claimants, such as: (i) California Fire Foundation, (ii) Caring Choices, (iii) North Valley Community Foundation, (iv) United Way of Northern California, (v) Los Angeles Fire Department Foundation, (vi) Northern California Fire Relief Fund, (vii) California Wildfire Relief Fund, (viii) California Governor's Office of Emergency Services, (ix) United Way of Northern California, (x) houses of worship, and (xii) community leaders.  Twitter posts were targeted to people who tweeted, posted about, or used hashtags or keywords related to the fires, including: (i) Butte fire (ii) #ParadiseStrong; (iii) Redwood fire, (iv) Nevada wildfire; (v) California wildfires, and (vi) #CampFire.

**Social Influencers**.  Prime Clerk also engaged the help of social media influencers to post and share information about the Bar Date on Instagram and Facebook.  The Noticing Program identified influencers with significant followings within the 18-24 age demographic and who either had personal experience with the wildfires, resided in California, or had a significant following in Northern California.  This effort reached over 1,200,000 followers and resulted in nearly 20,000 social engagements (clicks, comments and shares).

**Television and Video Advertising.**  The Debtors aired a total of 2,010 commercials across approximately 14 local broadcast television stations, generating over 32 million impressions and reaching wildfire claimants in seven relevant California counties.  Prime Clerk additionally aired 2,025 commercials on local cable channels, generating over 8.5 million impressions.  To reach wildfire claimants who may have moved out of California, Prime Clerk also ran 59 nationwide cable television commercials, generating over 105 million impressions.  Prime Clerk also incorporated digital video advertisements on devices such as Roku, Amazon, Samsung and PlayStation targeted to people who recently had moved out of California, resulting

in nearly 1.5 million video impressions.  The Debtors adopted these nationwide cable television and digital video components at the suggestion of the TCC.  (*See* Dkt. No. 2646 at 19.)

**Radio Advertising.**  The Debtors aired approximately 2,680 radio ads on a total of 34 local radio stations.  In addition, the Debtors ran streaming audio ads (*i.e.*, digital radio played via an internet connection) on Pandora, accompanied by digital banner ads, allowing the user to click through to a dedicated case web site.  The Debtors ran over 1.5 million streaming audio impressions with accompanied banner ads.

**Out of Home Advertising.**  The Debtors secured 17 static or digital billboards in Butte, Humboldt, Mendocino, Napa and Sonoma counties. The billboards appeared for nine weeks and delivered more than 10.5 million impressions.

**Public Relations**.  The Debtors issued a total of three press releases specific to the Bar Date deadline as part of the Noticing Plan, resulting in over 270 news mentions.

**Dedicated Website and Toll-Free Numbers.**  Prime Clerk established a dedicated case web site and toll-free numbers that were prominently displayed on all printed notice documents and paid advertising.  The case website contained a page specifically tailored to, and designed for, the holders of wildfire claims, including key dates and deadlines.  The case websites have received more than 850,000 page views.

Prime Clerk estimates that overall the Noticing Program reached approximately 98% of residents in four targeted designated market areas (San Francisco-Oakland-San Jose, Sacramento-Stockton-Modesto, Chico-Reading and Eureka), with an average frequency of 16 times.  More broadly, Prime Clerk estimates that the program reached 88% of California residents with an average frequency of 11 times and 80% nationwide with an average frequency of 3 times.

* * *

In sum, this was much, much more than a direct mailing program.  While it certainly satisfied the requirements of due process, satisfying that legal standard was not the Debtors' primary goal.  Getting the word out as best as the Debtors could in admittedly difficult

circumstances was the goal. We hope that the Court finds the additional information set forth herein to be useful.

                                        Respectfully submitted,

Dated: October 23, 2019         CRAVATH, SWAINE & MOORE LLP

                                        */s/ Kevin J. Orsini*
Paul H. Zumbro
Kevin J. Orsini
Omid H. Nasab
825 Eighth Avenue
New York, NY 10019
Telephone: 212.474.1000
Facsimile: 212.474.3700
Email: pzumbro@cravath.com
Email: korsini@cravath.com
Email: onasab@cravath.com

WEIL, GOTSHAL & MANGES LLP

Stephen Karotkin
Ray C. Schrock, P.C.
Jessica Liou
767 Fifth Avenue
New York, NY 10153-0119
Telephone: 212.310.8000
Facsimile: 212.310.8007
Email: stephen.karotkin@weil.com
Email: ray.schrock@weil.com
Email: jessica.liou@weil.com

KELLER & BENVENUTTI LLP

Tobias S. Keller (SBN 151445)
Jane Kim (SBN 298192)
650 California Street
San Francisco, CA 94108
Telephone: 415.496.6723
Facsimile: 650.636.9251
Email: tkeller@kellerbenvenutti.com
Email: jkim@kellerbenvenutti.com

*Counsel for the Debtors and Debtors in Possession*

////

////

////

////

DEBTORS' STATEMENT REGARDING CLAIMS NOTICING PROCEDURES – Case No. 19-cv-05257-JD

Pursuant to Local Rule 5-1(i)(3), I, Jane Kim, attest that concurrence in filing this document has been obtained from the other signatories.

KELLER & BENVENUTTI LLP

 */s/ Jane Kim*
Tobias S. Keller (SBN 151445)
Jane Kim (SBN 298192)
650 California Street
San Francisco, CA 94108
Telephone: 415.496.6723
Facsimile: 650.636.9251
Email: tkeller@kellerbenvenutti.com
Email: jkim@kellerbenvenutti.com