Pages 1 - 23

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE JAMES DONATO, JUDGE

```
IN RE PG&E CORPORATION AND          )
PACIFIC GAS AND ELECTRIC COMPANY,   )  NO. C 19-05257 JD
                                    )
                Debtors.            )  San Francisco, California
                                    )  Monday, December 2, 2019
_____)
```

**<u>TRANSCRIPT OF PROCEEDINGS</u>**

**<u>APPEARANCES</u>**:

For Creditor Committee, Official Committee of Tort Claimants:
                     BAKER & HOSTETLER LLP
                     1160 Battery Street East
                     Suite 100
                     San Francisco, California  94111
            BY:  **KIMBERLY S. MORRIS, ESQ.**


                     BAKER & HOSTETLER LLP
                     600 Montgomery Street
                     Suite 3100
                     San Francisco, California  94111-2806
            BY:  **ROBERT A. JULIAN, ESQ.**


                     BAKER & HOSTETLER LLP
                     45 Rockefeller Plaza
                     New York, New York  10111
            BY:  **DAVID W. RICE, ESQ.**

For Ad Hoc Group of Subrogation Claim Holders:
                     WILLKIE FARR AND GALLAGHER LLP
                     787 Seventh Avenue
                     New York, New York  10019-6099
            BY:  **BENJAMIN P. MCCALLEN, ESQ.**
                 **MARGOT G. MOONEY, ESQ.**


Reported By:  **BELLE BALL, CSR 8785, CRR, RDR**
            Official Reporter, U.S. District Court


        (Appearances continued, next page)

**APPEARANCES, CONTINUED**:


For Debtors-in-Possession PG&E Corporation and Pacific Gas and
Electric Company:
                      CRAVATH, SWAINE & MOORE, LLP
                      825 Eighth Avenue
                      New York, New York  10019-7475
            BY:  **KEVIN J. ORSINI, ESQ.**

                      KELLER & BENVENUTTI
                      650 California Street
                      Suite 1900
                      San Francisco, California  94108
            BY:  **TOBIAS KELLER, ESQ.**


For California State Agencies:
                      FELDERSTEIN FITZGERALD WILLOUGHBY
                         PASCUZZI & RIOS LLP
                      500 Capitol Mall
                      Suite 2250
                      Sacramento, California  95814
            BY:  **PAUL J. PASCUZZI, ESQ.**


For Ad Hoc Committee of Senior Unsecured Noteholders of Pacific
Gas and Electric Company:
                      AKIN GUMP STRAUSS HAUER & FELD LLP
                      580 California Street
                      Suite 1500
                      San Francisco, California  94104-1036
            BY:  **ASHLEY VINSON CRAWFORD, ESQ.**


For California Department of Forestry and Fire Protection:
                      STATE OF CALIFORNIA
                      Department of Justice
                      Office of the Attorney General
                      1300 I Street
                      Post Office Box 944255
                      Sacramento, California  94244-2550
            BY:  **TRACY L. WINSOR, ESQ.**


     (Appearances continued, next page)

**<u>APPEARANCES, CONTINUED</u>**:

For the United States:

                U.S. DEPARTMENT OF JUSTICE
                United States Attorney's Office
                450 Golden Gate Avenue
                Ninth Floor
                San Francisco, California  94102
      **BY:  SARA WINSLOW, ESQ.**

Also Present:

                **JAMES P. FRANTZ, ESQ.**
                **STEVEN J. SKIKOS, ESQ.**
                **RICHARD K. BRIDGFORD, ESQ.**

<u>**Monday - December 2, 2019**</u>                    <u>**2:03 p.m.**</u>

<u>**P R O C E E D I N G S**</u>

**THE CLERK:**  Calling Civil 19-5257, In Re PG&E

Corporation, and Pacific Gas and Electric Company.

Counsel?

**MR. JULIAN:**  Good afternoon, Your Honor.  Robert

Julian and Kimberly Morris of Baker Hostetler appearing on

behalf of the official tort committee in the PG&E case.

Your Honor, also with us is David Rice from our New York

office, who we brought out, and who has worked on the case and

on the Cal Fire dispute, on documents.  Mr. Rice is a member of

the bar at the state of New York and his *pro hac vice*

application is pending.

With your permission, we would like him to argue the

dispute between the subrogation claimants and the TCC on the

one hand, and the State of California on the other hand, with

respect to the Cal Fire investigation reports dealing with the

Camp Fire.

**THE COURT:**  Is he here?

**MR. JULIAN:**  Yes, Your Honor.

**THE COURT:**  Come on up.

(Request complied with by Mr. Rice)

**THE COURT:**  Okay.  Make your appearance.

**MR. RICE:**  David Rice for the TCC.

**THE COURT:**  Hi, Mr. Rice.  You're in good standing?

1          **MR. RICE:**  Yes, I am.

2          **THE COURT:**  No bar issues?

3          **MR. RICE:**  No bar issues.

4          **THE COURT:**  Everything's good?

5          **MR. RICE:**  Very good.

6          **THE COURT:**  All right.  You're admitted.

7          **MR. RICE:**  Thank you.

8          **THE COURT:**  All right.

9          **MR. MCCALLAN:**  Good afternoon, Your Honor.  Benjamin

10   McCallan, Willkie Farr and Gallagher, on behalf of the ad hoc

11   subrogation group.

12        And I have with me Margot Mooney of my office, who will

13   also be handling the Cal Fire dispute.

14          **THE COURT:**  Okay.  Great.

15          **MR. PASCUZZI:**  Good afternoon, Your Honor.  Paul

16   Pascuzzi, Felderstein Fitzgerald Willoughby Pascuzzi,

17   co-counsel with the California Attorney General's office for

18   the California state agencies, including Cal Fire.

19        Also in the courtroom, Your Honor, is Tracy Winsor from

20   the Attorney General's office, who will be handling the

21   Cal Fire discovery issue.

22        And Your Honor, if it's okay with the Court, I'd like to

23   update the Court on the status of the government entity claims.

24   Every --

25          **THE COURT:**  Yes.  We will get to that in just a

1    moment.

2              **MR. PASCUZZI:**  Thank you.

3              **THE COURT:**  Very good.

4              **MS. WINSLOW:**  Good afternoon, Your Honor.  Sara

5    Winslow for the United States.

6              **THE COURT:**  Oh.  Okay.  Yes.

7              **MR. ORSINI:**  Good afternoon, Your Honor.  Kevin

8    Orsini, Cravath, Swaine & Moore, on behalf of PG&E.

9         And also here with me today is Tobias Keller from Keller &

10   Benvenutti, for PG&E.

11             **THE COURT:**  Why don't we -- Mr. Orsini and

12   Mr. Julian, let's just, before I get to the other things, check

13   in generally.

14        Is there anything you two need to add or want to raise?

15             **MR. JULIAN:**  Yes, Your Honor.  Mr. Orsini and I

16   intend to file Judge Montali's decision on the inverse ruling.

17   Judge Montali adopted California's law on inverse.

18             **THE COURT:**  Oh, I have it.  You don't need to file

19   it.

20             **MR. JULIAN:**  Okay.  You have it.  And that's all we

21   have to report.

22             **THE COURT:**  Okay.  Everything else is moving along?

23             **MR. JULIAN:**  Everything is.

24             **MR. ORSINI:**  It is, Your Honor.

25             **THE COURT:**  Dates are working out?

1          **MR. JULIAN:**  Yes.

2          **THE COURT:**  Okay.  What about that custodian issue

3    that we were talking about?  You got that resolved?

4          **MR. ORSINI:**  We are working through it, Your Honor.

5    We filed a stipulation last week with respect to how we were

6    going to dealing deal with the privilege issues.

7          There are some issues that the TCC has raised, some

8    concerns they had about some of the search terms.  We're

9    working through that.  In fact, I think my team just sent a

10   response as we were about to stand up here.

11         I expect we're going to be able to resolve any remaining

12   disputed issues.  But Ms. Morris might have something as to add

13   on that front.

14         **THE COURT:**  All right.

15         Yes, Ms. Morris.

16         **MS. MORRIS:**  Nothing to add, other than I have not

17   yet had a chance to review the email that was sent to me at the

18   start of these proceedings.

19         And so I'll reserve the right to come back to you if we

20   can't work through those issues, but my hope is that we will be

21   able to.

22         **THE COURT:**  All right.

23         Let's do a little forward planning.  So I'm happy to see

24   you in two weeks, but I know that's getting into travel time.

25         Would you want to cancel that?  Or do you want to keep it

1   on calendar?

2          **MR. JULIAN:**  Keep it on calendar, Your Honor.

3          **THE COURT:**  Want to keep it on calendar?  Okay.

4      Mr. Orsini?

5          **MR. ORSINI:**  I agree with that.  If we collectively

6   have the view once we get closer to it that we don't need it,

7   with everything else going on, we can, of course, let you know,

8   or --

9          **THE COURT:**  Yeah.  Let me know -- let me know by

10  Friday, noon.  Noon by Friday.

11         **MR. ORSINI:**  The preceding Friday?

12         **THE COURT:**  Yeah.  Okay, that'll be good.

13      All right.  Let's take up the discovery issues.  Documents

14  241 and 244.

15      Who is going to do Cal Fire?

16         **MS. MOONEY:**  I think I'll start, and then I think

17  David has a few things he wanted to --

18         **THE COURT:**  Who is representing Cal Fire?

19         **MS. WINSOR:**  Good afternoon, Your Honor.  Tracy

20  Winsor here for Cal Fire, from the California Attorney General.

21         **THE COURT:**  All right.  Great.  Okay.  You two should

22  make your appearances again.

23         **MS. MOONEY:**  I'm Margot Mooney, on behalf of the

24  ad hoc subrogation group.

25         **THE COURT:**  Okay.  You need to speak up just a little

1    bit.  All right?

2              **MS. MOONEY:**  All right.

3              **THE COURT:**  Go ahead.

4              **MR. RICE:**  And David Rice for the TCC.

5              **THE COURT:**  Okay.  All right.  Let's hear from

6    Cal Fire.

7              **MS. WINSOR:**  Good afternoon, Your Honor.  Thank you.

8         As we understand it, there have been calls back and forth

9    today between the TCC and the ad hoc subrogation committee.

10   And there's been some discussion of whether there can be a

11   production perhaps of the investigation report in a redacted

12   form.  Those conversations, as we understand it, are ongoing.

13        So at this time, Cal Fire, as you have seen from our

14   letter that we filed last Friday, we are in a posture where the

15   prosecution team -- let me back up.

16        I'm here today representing Cal Fire as an independent

17   California state agency.  And there are a group of deputies who

18   are liaisons to the Butte County District Attorney's Office

19   that are involved with the criminal investigation.  And so to

20   the extent I speak today, I speak on behalf of Cal Fire, and

21   not on behalf of the criminal prosecution arm of the California

22   Attorney General's office.

23             **THE COURT:**  They are not here today.

24             **MS. WINSOR:**  They are not.  But I am privy to the

25   communications, and so I am here to update you on those.

1        **THE COURT:**  Okay.  But they're not here, and the

2    Butte County DA is not here, either.  Is that right?

3        **MS. WINSOR:**  That's correct, Your Honor.  The

4    meet-and-confer that is referenced in the letter from the TCC

5    occurred between the TCC attorneys and the subrogation

6    attorneys and the attorneys for Cal Fire, one of whom you see

7    standing before you today (Indicating).

8        And we have encouraged them on multiple occasions to speak

9    to the prosecution team because, as we have indicated in our

10   papers, the local enforcement agency, the Butte County District

11   Attorney, is the part of the State of California that has

12   control over the evidence and the information that they are

13   seeking.

14       So while Cal Fire has custody, certainly, of its own

15   report, its own photos and some of the evidence, as they have

16   indicated, some of the evidence is no longer in Cal Fire's

17   possession.  So all of the information that they seek is very

18   much subject to the control of that local law enforcement

19   agency.

20       **THE COURT:**  Well, let me ask you this.  You actually

21   read my mind a little bit.

22       You have a final report.  Right?  Cal Fire has a --

23       **MS. WINSOR:**  Cal Fire does, yes.

24       **THE COURT:**  So that report is done, and on a disk

25   drive somewhere ready to be printed out.  Right?

1          **MS. WINSOR:**  It is -- it would probably be in several

2     locations, Your Honor.

3          **THE COURT:**  All right.  And, sounds like you're

4     amenable to producing it with, maybe, some redactions?

5          **MS. WINSOR:**  Well, and that's the piece where I can't

6     speak.  It's fluid.  As I understand it, that is under

7     discussion.  And I think that's the direction thing are moving.

8     That the prosecution team has indicated willingness to produce

9     it with redactions.

10         We would ask that Your Honor wait, and not make an order

11    today, and allow the parties to meet and confer regarding the

12    extent of any redactions, and attempt to resolve any issues

13    that may arise in that regard.

14         **THE COURT:**  Okay.

15         Is it Ms. Mooney?

16         **MS. MOONEY:**  Yes.

17         **THE COURT:**  What is your view on that?  Do you want

18    me to wait?  Or do you want me to do something today?

19         **MS. MOONEY:**  We are happy to meet and confer with the

20    AG's office.  And we have a followup call scheduled for

21    tomorrow.  But, we do want to move quickly because of the

22    looming deadline for the exchange of expert reports.

23         And as we have laid out in our letter, this is --

24         **THE COURT:**  Let me ask you this.  I've already tipped

25    my hand.

1      I think the report is probably producible.  So you two

2  work out redactions, all right?  You should let me know by

3  Thursday, if you can't get it done.  Okay?

4      But given that PG&E has -- has acknowledged that the

5  equipment caused the fire, although they dispute the legal

6  implication of that, what is it you think the report's going to

7  give you that you don't already know?

8      So they're on the hook for saying:  Yes, as a literal

9  matter, our equipment caused the fire.

10      **MS. MOONEY:**  Right.  The report that we've seen for

11  the other fires contain a lot of detail about the facts and

12  circumstances surrounding each of the fires.  You know, where

13  there is an arborist -- where there's a vegetation-management

14  issue, there'll be an arborist report that will have details on

15  the trees.

16      Here, we would expect that there will be a report about

17  the conditions of the Caribou-Palermo line and the equipment

18  that was involved.

19      And looking to present the evidence to this Court in an

20  efficient manner, given the timeline that we are on, we think

21  that the reports provide invaluable evidence to the Court's --

22  for the Court's consideration in assessing PG&E's likely

23  liability.

24      **THE COURT:**  All right.

25      Mr. Rice, anything to add?

1          **MR. RICE:**  Yes, Your Honor.

2      The one point I just want to add is that given the crucial

3  importance of the report, itself, and also of the Camp Fire,

4  to --

5          **THE COURT:**  Well, why is it crucial, though?

6      I mean, if they -- if PG&E said:  Yes, we're on the hook,

7  so to speak, what more do you need?

8          **MR. RICE:**  Well, given the fact that the Camp Fire's

9  responsible for 75 percent of the total damages in the claims

10 proceeding, we need to know for ourselves, we need to do our

11 diligence and make sure that the victims here and our clients

12 have the access to the most possible evidence, so we can

13 present our case in the best possible way.

14     And I believe that, you know, having that report is a

15 crucial part of that.

16         **THE COURT:**  All right.  So the report sounds fine.

17 But the physical evidence, I don't really see.  Why do you need

18 that for?  I'm more skeptical that that's necessary.  I'm not

19 going to look at it.

20     I mean, I -- remember, we are estimating liability.  I'm

21 not making any determinations, as a final matter.  So why do

22 you need to see the physical evidence?

23         **MS. MOONEY:**  We have heard from our experts that it

24 will be helpful to them in putting together their final

25 reports, to be able to see the evidence, itself; possibly

1    submit it to non-destructive tentative testing; and/or to see

2    photos.

3         And we are also hoping for depositions to understand the

4    evidence --

5                   **THE COURT:**  We'll get to depositions in a moment.

6                   **MS. MOONEY:**  (Nods head)

7                   **THE COURT:**  All right.  What about physical evidence?

8                   **MS. WINSOR:**  Well, Your Honor, I very much agree with

9    the Court.  This is an estimation proceeding.  And Your Honor

10   has indicated that liability will be truncated.

11        I've personally sat through deposition of a PG&E lineman

12   that inspected that line in 2016 for replacement of the

13   connectors.

14        And the TCC noticed that deposition, and examined that

15   lineman about what he saw.  They showed him pictures of the

16   broken hook.  And he concurred that that was not in

17   workman-like condition, and needed to be replaced.

18        They showed him pictures of the exemplar hook that you see

19   in their letter on the left-hand side.  And he concurred under

20   my examination, and much more by the TCC, that the groove that

21   you see in that exemplar hook indicates that it should have

22   been replaced.

23                   **THE COURT:**  Is it true that those hooks are a hundred

24   years old?

25                   **MS. WINSOR:**  I'm not privy to that fact, Your Honor.

But it is my understanding that you can see rust and wear and corrosion on them, just from the photographs.

So I would very much concur with Your Honor that examination of the physical evidence may be of limited utility to this Court, in what the Court need to accomplish to evaluate these claims.

**THE COURT:**  So I think the physical evidence is a step away -- step too far away.  And I'm a little concerned that it is unique.  The report is not.  But the physical evidence is unique.  And if it's going to be used in a criminal prosecution, I think there are chain-of-custody issues and preservation issues that are important.  So I'm not persuaded that we need to do that now.

So the report, yes.  If you want to work out redactions, you have until 1:00 Thursday to let me know.  And if you can't do it -- I'm not going to read the report and line-edit it for you, but if you can't -- you need to tell me what the general categories are.

The burden's going to be on Cal Fire.  If there's something you want to keep out, you're going to need to tell me what it is you want to keep out, and what the necessity for that is.  And why attorneys'-eyes-only designation under the protective order would not be sufficient to preserve any confidentialities.

Physical evidence is a tentative no.  Meaning if you read

1    the report and there is a compelling need -- I want to

2    underscore "compelling" -- to see the physical evidence, I will

3    consider it.  But it's unlikely that's going to win.  So you're

4    going to have to come in with something good.  All right?

5    Something powerful and persuasive, if you want it.

6        And I think one deposition seems perfectly appropriate.

7    30(b)(6) witness.

8        Is that what you had in mind, Ms. Mooney?

9            MS. MOONEY:  That is what we had in mind, Your Honor,

10   as long as it's somebody who is informed, and prepared to speak

11   to the issues.

12           MR. RICE:  Yeah.  Ideally, yeah, the chief

13   investigator or someone who is in an ideal situation to be able

14   to speak to the report, and the details, collection processes,

15   that sort of thing.

16           THE COURT:  All right.  You can do a 30(b)(6).  And,

17   you know, don't -- don't go nuts with the topic.  It's the

18   contents of the report, and maybe how it was prepared.  And,

19   you know, something along those lines.

20       But it shouldn't be more than -- I'm not tying your hands,

21   but I would expect it not to be more than somewhere between

22   four to five topics.

23           MR. RICE:  (Nods head)

24           THE COURT:  In a 30(b)(6).  Okay?

25       All right.  Anything else I can help you with today?

1         **MS. WINSOR:**  Your Honor, I just want to make sure I

2    understand the Court's ruling regarding the deposition.

3         The last that we had met and conferred about this, the

4    attorneys were looking for a percipient deposition only to show

5    some photos that they had, like the ones here (Indicating), and

6    ask what the condition was when someone saw it.

7         As I understand it, we are talking now more about a

8    deposition to lay the foundation for the report as an official

9    record, and --

10         **THE COURT:**  Oh, no, no, I'm not worried about -- the

11    letter -- 241 -- Docket 241 says two depositions, about -- you

12    know, from Cal Fire employees, for people knowledgeable about

13    the investigation.  I'm letting them have one.

14         And in order to make life easier, they can do it as a

15    30(b)(6) deposition, and just tell you what topics they'd like

16    to cover.  Okay?  It shouldn't be more than four or five.

17    Okay?

18         **MS. WINSOR:**  (Nods head)

19         **THE COURT:**  All right.  Anything -- that's it for

20    these two things?

21         **MR. ORSINI:**  (Nods head)

22         **THE COURT:**  Okay, good.

23         **MR. RICE:**  Thank you, Your Honor.

24         **MS. MOONEY:**  Thank Your Honor.

25         **THE COURT:**  All right.  I issued the order on the

1  use -- restrictions on the use of the fire victim testimony.

2  You all have already agreed to ESI protocols.

3       Anything else for today?

4            **MR. JULIAN:**  No, Your Honor.

5            **MR. PASCUZZI:**  Your Honor?

6            **THE COURT:**  Yes.  Oh, yes.

7            **MR. PASCUZZI:**  Paul Pascuzzi, co-counsel with the

8  Attorney General's office, for the California state agencies.

9       I just wanted to update you on the status of the

10  government entity claims, Your Honor, --

11            **THE COURT:**  Yes.

12            **MR. PASCUZZI:**  -- which include the state agency

13  claims and the fed agency claims.

14       We did file our pleading, and we filed a copy of it with

15  this Court last week.  So you have an understanding of what was

16  at issue here there.

17       The debtor's opposition is due this Thursday.  And then

18  our response is due on December 12th.  And then the Bankruptcy

19  Court will have a hearing on December 17th.

20       So I'm anticipating that time around the 17th, we will

21  have some sort of indication from the Bankruptcy Court about

22  what government fire claims are to be part of this estimation

23  proceeding.

24       And then we will meet and confer with the debtors

25  regarding further scheduling and things like that, similar to

1  the scheduling order that's already been issued for the tort

2  claims that --

3          THE COURT:  All right.  Well, if you know by the

4  17th -- do you expect to hear, that day?  Or do you know?

5          MR. PASCUZZI:  It's hard to tell, Your Honor.  There

6  are 42 claims for state agencies, about eight different state

7  agencies.  I know for the United States government, there's

8  less claims.

9      But we -- we've conceded that six of them, mostly related

10  to the Camp Fire, are unliquidated.  But 42 is what the debtor

11  says, and we say six.  So --

12          THE COURT:  All right.  Well, let's say you hear by

13  the end of the year.  I think in a moment of inattention, I may

14  have said we'll do you after the February hearing.  But I'd

15  like to do you at the same time.

16      So if you hear that by the end of the year, can you just

17  kind of get on the same track with everybody else?

18          MR. PASCUZZI:  We'll do our best, Your Honor.

19      And actually, we've been trying to get an agreed

20  protective order with the debtor, so that we can be part of the

21  discovery and get the information and the discovery that's been

22  produced.

23      We're not quite there yet.  I'm hoping very soon we will

24  be.

25          THE COURT:  What's the holdup?

1          **MR. PASCUZZI:**  The law enforcement exception and

2     Public Records Act exception.  The other protective order was

3     not -- didn't deal with any governmental entity issues.

4          So the ball right now is in the debtors' court.  We're

5     waiting to hear back from them.  I'm hopeful we have that

6     resolved.

7          **THE COURT:**  What is the issue?

8          **MR. PASCUZZI:**  Your Honor, Public Records Act,

9     Freedom of Information Act issues.  If we get one, how do we

10    deal with it.  Also, law enforcement use of any information

11    that we see, we deal with on -- through the discovery.

12         So we've got specific -- basically an amendment to the

13    existing protective order, that the debtor -- and I believe,

14    speaking with the Weil counsel, we're on the same page at --

15    I'm just waiting back to hear.

16         **THE COURT:**  Are you saying that if you get discovery

17    from PG&E and a Public Records Act request, you may be required

18    to produce that?

19         **MR. PASCUZZI:**  Exactly, Your Honor.

20         **THE COURT:**  Even if it's under a protective order?

21         **MR. PASCUZZI:**  Yes, Your Honor.  It just outlines the

22    procedures for us to give them notice, so that they can come to

23    court to get a protective order before we have to produce it

24    under a Free- -- Public Records Act exception.

25         So it's -- it's simple stuff.  We should be -- we should

1    be done with this.  We've been kind of -- feel like we have

2    been slow-played a little bit.

3          But, we don't have access to any of the discovery, Your

4    Honor --

5                **THE COURT:**  Slow-played by who?

6                **MR. PASCUZZI:**  The debtors.

7                **THE COURT:**  Oh.

8                **MR. PASCUZZI:**  And Your Honor, I will say that --

9                **THE COURT:**  Why don't you come on up, Mr. Orsini.

10               **MR. PASCUZZI:**  The United States does have a

11   protective order that's been entered by the Bankruptcy Court,

12   and they've not been given access to discovery, either.  But

13   we're told we will be given discovery.

14         So --

15               **THE COURT:**  What's the holdup?

16               **MR. ORSINI:**  Your Honor, I think -- as Mr. Pascuzzi

17   just mentioned, we had negotiated an amendment to the

18   protective order for the federal government.

19         There were a number of additional complications with

20   respect to the state government entities.  It's been in

21   process.  My understanding is we're pretty close to done.

22         There hasn't been any slow-playing.  It's just with all of

23   the balls in the air, I think this one is -- is close to the

24   finish line, but not quite there yet.

25               **THE COURT:**  How about Wednesday?  Can you get it done

1     by Wednesday?

2              **MR. ORSINI:**  I would expect so.

3              **THE COURT:**  Wednesday.  Okay.  Get it done by

4     Wednesday.

5         I want to make sure the government entities are on the

6     same program.  So I don't want any unnecessary delays.  All

7     right?

8              **MR. PASCUZZI:**  Your Honor, we'll meet and confer with

9     the debtor, because we -- we haven't disclosed witnesses and

10    things like that, because we don't know what claims are at

11    issue yet.

12        So we will do our best to get on the same --

13             **THE COURT:**  Well, make it a rolling disclosure.

14    Don't wait until you know everything.  Just as you know,

15    disclose.

16             **MR. PASCUZZI:**  Okay.

17             **THE COURT:**  And --

18             **MR. ORSINI:**  We'll find a way to make the schedule

19    work.

20             **THE COURT:**  Maybe this won't happen.  But let's bank

21    on the probability that it will.  In other words, you'll be

22    here with me.  And I don't want to have to start doing

23    everything on February 1st.

24        So let's just get it going now.  Okay?

25             **MR. PASCUZZI:**  Thank you, Your Honor.

1          **THE COURT:**  And get the order in place by Wednesday.

2      Is that with me or with the Bankruptcy Court?

3          **MR. PASCUZZI:**  Bankruptcy Court, Your Honor.

4          **MR. ORSINI:**  Technically a judgment --

5          **THE COURT:**  All right.  Just get it on file with the

6  Bankruptcy Court, then, by Wednesday.

7      Okay.  Anything else for today?

8          **MR. ORSINI:**  Not from us, Your Honor.

9          **THE COURT:**  Anything else from anyone else?

10     (No response)

11         **THE COURT:**  No?  Okay.  Thanks very much.

12         **THE CLERK:**  All rise.  Court is in recess.

13     (Proceedings concluded)

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4               **CERTIFICATE OF REPORTER**

5          I, BELLE BALL, Official Reporter for the United States

6   Court, Northern District of California, hereby certify that the

7   foregoing is a correct transcript from the record of

8   proceedings in the above-entitled matter.

9

10                        *Belle Ball*

11          _____

                        /s/ Belle Ball

12          Belle Ball, CSR 8785, CRR, RDR

13            Monday, December 2, 2019

14

15

16

17

18

19

20

21

22

23

24

25