```
                                              Pages 1 - 12

                  UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

              BEFORE THE HONORABLE JAMES DONATO

IN RE: PG&E CORPORATION and    )
PACIFIC GAS AND ELECTRIC       ) No. 19-5257 JD
COMPANY,                       )
                               ) San Francisco, California
              Debtors.         ) Tuesday
                               ) December 17, 2019
                               ) 1:00 p.m.
```

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

**For Creditor Committee, Official Committee of Tort Claimants:**
               BAKER & HOSTETLER LLP
               Levi's Plaza
               1160 Battery Street East
               Suite 100
               San Francisco, California  94111
     BY:  **ROBERT A. JULIAN, ESQ.**
         **KIMBERLY S. MORRIS, ESQ.**

**For Ad Hoc Group of Subrogation Claim Holders :**
               WILLKIE, FARR & GALLAGHER LLP
               878 Seventh Avenue
               New York, New York  10019
     BY:  **BENJAMIN P. McCALLEN, ESQ.**

**For Creditor California State Agencies:**
               FELDERSTEIN, FITZGERALD, WILLOUGHBY
                 PASCUZZI & RIOS LLP
               500 Capitol Mall
               Suite 2250
               Sacramento, California  95814
     BY:  **PAUL J. PASCUZZI, ESQ.**

       (APPEARANCES CONTINUED ON FOLLOWING PAGE)

*Reported By:*   *Debra L. Pas, CSR 11916, CRR, RMR, RPR*
                  *Official Reporter - US District Court*
                  *Computerized Transcription By Eclipse*

```
 1   APPEARANCES:   (CONTINUED)

 2   For Creditor Committee, Official Committee of Unsecured
     Creditors:
 3                            MILBANK, TWEED, HADLEY & MCCLOY LLP
                              1850 K Street, N.W.
 4                            Suite 100
                              Washington, D.C.  20006
 5                      BY:   ANDREW LEBLANC, ESQ.

 6


 7
     For Ad Hoc Bondholder Committee:
 8                            AKIN, GUMP, STRAUSS, HAUER
                                & FELD LLP
 9                            580 California Street
                              San Francisco, California  94104
10                      BY:   ASHLEY VINSON CRAWFORD, ESQ.

11
                              AKIN, GUMP, STRAUSS, HAUER
12                              & FELD LLP
                              One Bryant Park
13                            New York, New York  10036
                        BY:   ABID QURESHI, ESQ.
14

15

16   For Debtor-in-Possession PG&E Corporation:
                              CRAVATH, SWAINE & MOORE LLP
17                            825 Eighth Avenue
                              New York, New York  10019
18                      BY:   KEVIN ORSINI, ESQ.

19

20                               _  _  _

21

22

23

24

25
```

```
 1   Tuesday - December 17, 2019                        1:01 p.m.
 2                         P R O C E E D I N G S
 3           THE CLERK:  Calling Civil 19-5257, In Re PG&E
 4   Corporation and Pacific Gas and Electric.
 5       Counsel.
 6           MR. JULIAN:  Good afternoon, your Honor.  Robert
 7   Julian and Kim Morris for Baker Hostetler appearing on behalf
 8   of the Tort Committee.
 9           MR. McCALLEN:  Good afternoon, Your Honor.  Benjamin
10   McCallen, Willkie, Farr and Gallagher, on behalf of the Ad Hoc
11   Subrogation Group.
12           MR. ORSINI:  Good afternoon, Your Honor.  Kevin
13   Orsini, Cravath, Swaine and Moore, for PG&E.
14           THE COURT:  Okay.  Who is going to come up for the
15   claimants?
16       Mr. Julian?  All right.  What's the latest?
17           MR. ORSINI:  So I can begin, Your Honor.  Kevin
18   Orsini for the debtors.
19       We have made tremendous progress in these bankruptcy
20   cases.  At this point we now have proposed settlement
21   agreements with all three categories of wildfire claimants.
22       We had previously had agreements with the public entity
23   plaintiffs and the subrogation insurers.
24       As Your Honor is aware, we have now entered into a
25   restructuring support agreement with the Official Committee for
```

1    Tort Claimants, who Mr. Julian represents, as well as attorneys
2    who represent at least 70 percent of the actual wildfire
3    claimants.
4         That settlement that is before Judge Montali -- and we're
5    actually in a pause in his proceedings today to come up here
6    and talk to Your Honor.  The settlement before Judge Montali,
7    if approved, would provide for the creation of a trust in the
8    amount of 13-and-a-half billion dollars to provide for the
9    resolution of all of the wildfire claims of the individuals and
10   various other entities that had not previously been settled in
11   these bankruptcies.
12        If that settlement is approved and we move forward towards
13   confirmation, we will no longer need to have the estimation
14   proceedings before Your Honor that have been scheduled.  We
15   will have effectively stipulated to an estimated amount that
16   will go into the trust to satisfy these claims.
17        And accordingly, as Your Honor knows, we have requested a
18   stay of those estimation proceedings while we worked through
19   the approval of the settlement that's before Judge Montali.
20        We have also in the meantime gotten a two-week continuance
21   of the state court jury trial on the Tubbs fire litigation,
22   again, to allow us to resolve all of these issues.
23        In the event that Judge Montali does approve the proposed
24   settlement agreement with the TCC and the wildfire lawyers, we
25   will also enter into settlement agreements with the preference

1  plaintiffs that are in the Tubbs case before the state court,
2  and so that will resolve that trial as well.
3       So where we are right now, Your Honor, is there were a
4  couple of issues on calendar before Judge Montali this morning.
5  We have not yet gotten through all of the argument with respect
6  to the proposed settlement.
7       Judge Montali has indicated that he expects to issue oral
8  rulings today on both the proposed settlement agreement with
9  the Tort Claimants Committee and the wildfire victims
10 attorneys, as well as the previously submitted settlement with
11 the subrogation plaintiffs.
12      So at this point, Your Honor, particularly given that if
13 those settlements are approved, both are approved, we will not
14 need to proceed with the estimation proceedings.  We would ask
15 that the Court extend the stay that's currently in place, that
16 I think technically expires today, extend that stay pending
17 Judge Montali's orders on the two settlements.
18      If Judge Montali approves both of those, as we hope and
19 expect he will, then we can permanently take the estimation
20 proceedings off calendar.  If he doesn't, we can come back and
21 figure out the path forward.
22           **THE COURT:**  Mr. Julian?
23           **MR. JULIAN:**  He is correct, Your Honor, with one
24 qualification; that the $13.5 billion pot actually has an
25 additional assignment of several causes of action to the trust

1  to litigate on behalf of the fire victims.  But that's the pot
2  and that's the settlement.
3          **THE COURT:**  Well, what about the Government
4  claimants, FEMA and state?
5          **MR. ORSINI:**  So the FEMA and state claims will be
6  part of the trust that's being created as part of the
7  settlement.  They were not signatories to that settlement
8  agreement.  They have presented certain objections to the
9  settlement, very specific provisions of the settlement that
10 will be addressed by Judge Montali, and I expect will be argued
11 later today.
12    But to the extent that the RSA is approved, what it will
13 do is create this trust to which all claims that are not
14 subrogation claims or the settled public entity claims will be
15 funneled, and whatever their ultimate recovery will be will be
16 determined by the trustee post confirmation of a plan of
17 reorganization.
18          **THE COURT:**  Well, I'm just wondering.  I don't think
19 there's anything left here either way.  Planning gets approved,
20 you're done -- I mean, the settlement gets approved, you're
21 done.  Settlement is not approved, you have effectively
22 estimated the loss at 13.5 billion.  So what else is there to
23 do?
24          **MR. JULIAN:**  That's the way we would view it.
25          **MR. ORSINI:**  I think that's sounds about where we are

```
 1  going to come out, Your Honor, and I expect --
 2          THE COURT:  In essence, you've stipulated -- the tort
 3  claimants have stipulated that the value of their claims is
 4  13.5 billion.
 5          MR. JULIAN:  Your Honor, the tort claimants have
 6  settled the estimation proceeding for 13.5 billion, plus an
 7  assignment of the causes of action.
 8      They have not agreed that that is a perfect valuation, but
 9  for purposes of AB-1054 we believe --
10          THE COURT:  But as an estimate.
11          MR. JULIAN:  -- that's a fair settlement.
12          THE COURT:  An estimate you can live with.
13          MR. JULIAN:  It's an estimate we can certainly live
14  with and is important to live with, Your Honor.
15      And one qualification.  If the plan were not to be
16  confirmed, the outside chance that the plan would not be
17  confirmed in several months, we would be back here.  However,
18  I anticipate that this plan would be confirmed.
19          THE COURT:  Why would you be back here?
20          MR. JULIAN:  Your Honor, if the plan is not
21  confirmed, I think the debtor is going to argue we don't have
22  our 13.5.  I would argue we do have our 13.5.  It's a
23  "depends."  It depends on what the subro claimants argue.
24      Essentially for our purposes here, Your Honor, I think
25  this estimation proceeding should be taken off calendar, and
```

1   Mr. Orsini and I would submit a stip and order once we have the
2   approval from Judge Montali, if, indeed, that happens today.
3           **MR. ORSINI:**  Just from the debtor's perspective, Your
4   Honor.
5       I could foresee some hypothetical situations in which we
6   would have to be back here to figure out whether the number is
7   13.5 or something lower than that, if things play out in a
8   variety of ways that we can't even begin to foresee right now.
9       I think where we are right now, it makes all the sense in
10  the world for us to take the proceeding --
11          **THE COURT:**  But PG&E has already agreed that the
12  value of the outstanding claims is roughly 13.5 billion.
13          **MR. ORSINI:**  PG&E has agreed that --
14          **THE COURT:**  Why would you be coming back to tell me
15  it's a different number?
16          **MR. ORSINI:**  Well, Your Honor, we have agreed as part
17  of the settlement that 13.5 is a reasonable resolution of these
18  claims, as have other constituents in the bankruptcy.
19      In the event that this settlement did not get approved or
20  in a hypothetical scenario where potentially the subrogation
21  settlement didn't get approved or there were other confirmation
22  issues that arose, there could be circumstances in which the
23  parties would have to come back and argue to Your Honor what we
24  thought the claims were actually worth in the litigated outcome
25  as opposed to a settled outcome.

1     Again, these are hypotheticals --

2             **THE COURT:**  Mr. Orsini, we started this estimation
3  process by looking at other settlements and inferring from
4  those other settlements what the value would be here.
5     Now we have the gold standard.  You have actually settled.
6  So I don't have to even infer.  You've put -- you've put the
7  ink on the paper and you have said it's 13.5 billion.
8     I just can't imagine that you would ever be allowed to
9  revisit that.  Maybe we don't have to get into it, but, you
10 know, whether -- settlement or not, you have both estimated the
11 value to be 13.5 billion.  So that figure is here.
12    I mean --
13            **MR. JULIAN:**  That's why we think we're done, Your
14 Honor.
15            **THE COURT:**  Okay.  All right.  Well, is there any
16 reason just not to close up shop and send you on our way to --
17 what floor is the Bankruptcy Court on?
18            **MR. JULIAN:**  16.
19            **MR. ORSINI:**  16, Your Honor.
20            **THE COURT:**  16, yes.  I should know that.
21            **MR. ORSINI:**  I don't believe there is any reason not
22 to do that.
23    Again, I don't think we need to get into this today.  And
24 I hope that we'll never have to need to get into this, but we
25 have agreed to the 13-1/2 as part of the comprehensive

1  settlement.  If that settlement weren't approved, that could
2  lead to circumstances where we would have to discuss what the
3  remedy is.  Because it's not just the number, there are other
4  provisions related to it as well.
5      Again, these are hypotheticals that I think everyone in
6  this courtroom hopefully never has to talk about again.
7          **THE COURT:**  So if we close now, February is off the
8  books.  I'm going to restore my MDL trial, and I will not have
9  you in by June 30th.  You understand that.  That's -- I mean,
10 if you want me -- if you want to turn off the lights, they are
11 going to go all the way off.  Okay?  Is that what you want to
12 do?
13         **MR. ORSINI:**  What I would propose, Your Honor, is we
14 keep the stay in place through at least the end of this week.
15 I expect we will get -- as Judge Montali has indicated, he
16 expects to give an oral ruling today on both RSAs.  That should
17 then permit Mr. Julian and I to prepare a stipulation that we
18 can present to you tomorrow that would allow you to take -- if
19 Judge Montali approves the settlement, to take everything off
20 calendar.
21         **THE COURT:**  All right.
22         **MR. JULIAN:**  I that that's the safest way to go.
23         **THE COURT:**  All right.
24         **MR. JULIAN:**  But I agree with all your other
25 comments.  They've agreed, so...

1   **THE COURT:** You probably would have an easy argument
2   if that ever came, but we'll see.
3       All right. So I'll continue the stay until Friday the
4   20th. Just let me know as soon as you can. All right?
5       And everything else is done. No FEMA. No Butte County.
6   No subrogation.
7   **MR. ORSINI:** That's right, Your Honor. This resolves
8   everything.
9   **THE COURT:** Anybody here want to disagree with that?
10  **MR. McCALLEN:** Benjamin McCallen, Willkie Farr and
11  Gallagher, on behalf of the Ad Hoc Subrogation Group.
12      Just for the record, Your Honor, we're in agreement with
13  everything that Mr. Orsini and Mr. Julian said about the status
14  of the case and what makes sense going forward.
15  **THE COURT:** Okay.
16  **MR. McCALLEN:** Thank you.
17  **THE COURT:** Just out of curiosity, because I had this
18  other case, if the Governor has not approved the deal, what
19  happens to AB-1054 participation for PG&E?
20  **MR. ORSINI:** So the Governor's counsel spoke this
21  morning in Judge Montali's court, and I don't want to try to
22  summarize what she said, but I think the take-away at a high
23  level from Judge Montali's perspective was the approval of this
24  settlement will not ultimately determine whether the plan of
25  reorganization that's presented for confirmation does or does

1  not comply with AB-1054. That's going to be something that
2  will have to be addressed by Judge Montali and by the CPUC as
3  part of the continued reorganization proceedings.
4      It's our full expectation that the plan of reorganization
5  will satisfy AB-1054. In fact, we think our current plan does.
6  The Governor has a different view of that. And we are going to
7  work together to make sure that we have a plan that satisfies
8  AB-1054, because that's a critical part of this company getting
9  out of bankruptcy.
10          **THE COURT:** Okay. All right. We'll hang fire until
11  the 20th and you'll let me know what happens.
12      Okay. Thank you.
13      (Proceedings adjourned.)

**CERTIFICATE OF OFFICIAL REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Tuesday, December 17, 2019