WEIL, GOTSHAL & MANGES LLP
Stephen Karotkin (*pro hac vice*)
(stephen.karotkin@weil.com)
Theodore E. Tsekerides (*pro hac vice*)
(theodore.tsekerides@weil.com)
Jessica Liou (*pro hac vice*)
(jessica.liou@weil.com)
Matthew Goren (*pro hac vice*)
(matthew.goren@weil.com)
767 Fifth Avenue
New York, NY 10153-0119
Tel: 212 310 8000
Fax: 212 310 8007

CRAVATH, SWAINE & MOORE LLP
Paul H. Zumbro (*pro hac vice*)
(pzumbro@cravath.com)
Kevin J. Orsini (*pro hac vice*)
(korsini@cravath.com)
Omid H. Nasab (*pro hac vice*)
(onasab@cravath.com)
825 Eighth Avenue
New York, NY 10019
Tel: 212 474 1000
Fax: 212 474 3700

KELLER BENVENUTTI KIM LLP
Tobias S. Keller (#151445)
(tkeller@kbkllp.com)
Peter J. Benvenutti (#60566)
(pbenvenutti@kbkllp.com)
Jane Kim (#298192)
(jkim@kbkllp.com)
650 California Street, Suite 1900
San Francisco, CA 94108
Tel:   (415) 496-6723
Fax:   (415) 636-9251

*Attorneys for Debtors and Debtors in Possession*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION,<br><br>     - and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>                    Debtors. | Civil Case No. 19-05257 (JD)<br><br>Bankruptcy Case No. 19-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**DEBTORS' MOTION PURSUANT TO 11 U.S.C. §§ 105(A) AND 502(C) TO ESTABLISH ESTIMATED AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES**<br><br>Date: May 21, 2020<br>Time: 10:00 a.m.<br>Ctrm: 11<br>Judge: Hon. James Donato |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD: PLEASE TAKE NOTICE** that on May 21, 2020 at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 11, 19th Floor, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable James Donato, and following the occurrence of all relevant conditions precedent, including the satisfaction of the Consenting Fire Claimants Threshold vote, the undersigned debtors and debtors in possession will move the Court for an order adopting the $13.5 billion amount agreed to by the Parties in the Tort Claimant RSA as the estimated amount of the Fire Victim Claims for all purposes of the Debtors' chapter 11 cases (including, without limitation, for distribution to the Fire Victim Trust under the Plan), and concluding the estimation proceedings.[1]

This motion is based upon this Notice of Motion and the accompanying Memorandum of Points and Authorities, other materials in the record, argument of counsel, and such other matters as the Court may consider.

---

[1] All capitalized terms have the meanings set forth below.

PG&E Corporation and Pacific Gas & Electric Company (together, "**PG&E**" or the "**Debtors**") submit this Motion to Establish the Estimated Amount of Fire Victim Claims For All Purposes of the Chapter 11 Cases ("**Motion**").

I.  **PRELIMINARY STATEMENT**

On December 6, 2019, after extensive negotiations and assistance from a court-appointed mediator, the TCC, the Debtors, the Shareholder Proponents of the Plan (as defined below), and attorneys representing over 70% of individual holders of Fire Victim Claims (as defined below, collectively **"The Parties"**) entered into a Restructuring Support Agreement ("**Tort Claimant RSA**") wherein the Parties agreed to settle Fire Victim Claims by establishing a trust (the "**Fire Victim Trust**") under the Plan for the benefit of Fire Victim Claims. Pursuant to the Plan, the Fire Victim Trust will be funded with $6.75 billion in cash and PG&E stock valued at $6.75 billion and the assignment of certain rights and causes of action. *See* Tort Claimant RSA, *Debtors' Mot. Pursuant to 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 and 9019 Authorizing the Debtors and TCC to Enter into Restructuring Support Agreement*, Ex. A, Bankr. Dkt. No. 5038-1 (Dec. 9, 2019).[2] Certain of the terms of the Tort Claimant RSA have been incorporated in the Debtors' Amended Plan of Reorganization. *Debtors' Amended Plan of Reorganization*, Bankr. Dkt. No. 6320 (Mar. 16, 2020) (as may be further amended, modified or supplemented, the "**Plan**"), §§ 5.4, 6.7.

Following briefing, notice and a hearing on the matter, the Bankruptcy Court approved the Tort Claimant RSA on December 19, 2019, pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 363(b). Following the approval of the Tort Claimant RSA, this Court stayed the pending claims estimation proceedings until further notice. Further to and as contemplated by the Tort Claimant RSA, upon the satisfaction of the conditions precedent contained in the Tort Claimant RSA and described below, the Debtors seek an order from this Court (1) adopting the $13.5 billion amount agreed to by the Parties in the Tort Claimant RSA as the amount of the Fire Victim Claims pursuant to 11 U.S.C.

---

[2] "Bankr. Dkt. No." refers to documents filed in *In re PG&E Corp. and Pacific Gas & Electric Co.*, Case No. 19-bk-30088 (DM) (Bankr. N.D. Cal).

§ 502(c) for all purposes in the Debtors' chapter 11 cases (including, without limitation, for distribution to the Fire Victim Trust under the Plan), and (2) resolving and closing the estimation proceedings before this Court.

This Court has already expressed the opinion that the Parties' agreed amount is the best estimate of the value of the Fire Victim Claims for 11 U.S.C. § 502(c) purposes. Likewise, in other estimation proceedings, courts have found that a settlement value, reached after vigorous arms' length negotiations, can serve as a valid indicator of the value of unliquidated claims for estimation under 11 U.S.C. § 502(c). Here, the Debtors, the TCC and attorneys representing over 70% of individual holders of Fire Victim Claims have reached a settlement, embodied in the Tort Claimant RSA, that was approved by the Bankruptcy Court, establishing $13.5 billion as the aggregate value of the Fire Victim Claims.

On March 17, 2020, the Bankruptcy Court approved the Debtors' disclosure statement for the Plan, which will now be disseminated to, *inter alia*, the individuals and entities that hold Fire Victim Claims to give them the opportunity to vote to accept or reject the Plan. The Tort Claimant RSA requires that the class of Fire Victim Claims vote as a class to accept the Plan under 11 U.S.C. §1126(c) as determined by the Bankruptcy Court (the "**Consenting Fire Claimants Threshold vote**"), as a condition precedent to estimating the Fire Victim Claims at $13.5 billion. If the class of Fire Victim Claims votes to accept the Plan, their votes will demonstrate further support for the $13.5 billion amount agreed to in the Tort Claimant RSA and satisfy this condition.

Accordingly, the Debtors ask the Court, following the occurrence of all relevant conditions precedent, including the satisfaction of the Consenting Fire Claimants Threshold vote, to adopt the $13.5 billion amount as the estimated amount of the Fire Victim Claims for all purposes of the Debtors' chapter 11 cases (including, without limitation, for distribution to the Fire Victim Trust under the Plan), and conclude the estimation proceedings.

Case 3:19-cv-05257-JD   Document 286   Filed 03/20/20   Page 5 of 12

4

## II. FIRE VICTIM CLAIMS

For the purposes of this Motion, the scope of "**Fire Victim Claims**," is the same as used in the Plan and means any Fire Claim that is not a Public Entities Wildfire Claim, Subrogation Wildfire Claim, or a Subrogation Butte Fire Claim. Certain other relevant definitions from the Plan that are used in the definition of Fire Victim Claim include the following:[3]

**Fire Claim** means any Claim against the Debtors in any way arising out of the Fires, including, but not limited to, any Claim resulting from the Fires for (a) general and/or specific damages, including any Claim for personal injury, wrongful death, emotional distress and similar claims, pavement fatigue, damage to culverts, ecosystem service losses, municipal budget adjustments/reallocation, lost revenue and tax impacts, local share of reimbursed fire clean-up costs, future estimated infrastructure costs, water service losses, lost landfill capacity, costs related to unmet housing (e.g., housing market impact due to the Fires and adjustments for increased homeless population), and/or hazard mitigation costs (including, watershed restoration and hazardous tree removal expenses); (b) damages for repair, depreciation and/or replacement of damaged, destroyed, and/or lost personal and/or real property; (c) damages for loss of the use, benefit, goodwill, and enjoyment of real and/or personal property; (d) damages for loss of wages, earning capacity and/or business profits and/or any related displacement expenses; (e) economic losses; (f) damages for wrongful injuries to timber, trees, or underwood under California Civil Code § 3346; (g) damages for injuries to trees under California Code of Civil Procedure § 733; (h) punitive and exemplary damages under California Civil Code §§ 733 and 3294, California Public Utilities Code § 2106, or otherwise, (i) restitution; (j) fines or penalties; (k) any and all costs of suit, including all attorneys' fees and expenses, expert fees, and related costs, including all attorneys and other fees under any theory of inverse condemnation; (l) for prejudgment and/or postpetition interest; (m) other litigation costs stemming from the Fires; and (n) declaratory and/or injunctive relief. For avoidance of doubt and without prejudice to the Debtors' right to object to any such Claim, "Fire Claim" shall not include any (x) Claim for substantial contribution under section 503(b) of the Bankruptcy Code, (y) Subordinated Debt Claim, HoldCo Common Interest or HoldCo Rescission or Damage Claim, or (z) Ghost Ship Fire Claim. The Fire Claims shall not include claims arising from any fire other than the Fires (including, without limitation, the Kincade Fire or any postpetition fire) or any Administrative Expense Claims.

**Fires** means the fires that occurred in Northern California, listed on Exhibit A to the Plan, which includes the 2015 Butte Fire, the 2018 Camp Fire and the following 22 2017 North Bay Fires: (1) Adobe; (2) Atlas; (3) Blue; (4) Cascade; (5) Cherokee; (6) Highway 37; (7) Honey; (8) LaPorte; (9) Lobo; (10) Maacama; (11) McCourtney; (12) Norrbom; (13) Nuns; (14) Oakmont/Pythian; (15) Partrick; (16) Pocket; (17) Point; (18) Potter/Redwood; (19) Pressley; (20) Sullivan; (21) Sulphur; and (22) Tubbs.

**Public Entities Wildfire Claim** means any Fire Claim against the Debtors, including any Claim pleaded or asserted or that could have been pleaded or asserted based on the factual allegations set forth in the Public Entities Operative Complaints or that were filed or could be

---

[3] Other capitalized terms used by the definitions below and not otherwise defined herein have the meanings set forth in the Plan.

DEBTORS' MOTION TO ESTABLISH THE ESTIMATED AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES
CIVIL CASE NO. 19-05257 (JD)

filed by the Public Entities in connection with the Chapter 11 Cases whether arising under California law or any other applicable law of the United States (state or federal) or any other jurisdiction, in each case whether such claims are absolute or contingent, direct or indirect, known or unknown, foreseen or unforeseen, in contract, tort or in equity, under any theory of law.

**Subrogation Wildfire Claim** means any Fire Claim (other than a Fire Claim arising from the Butte Fire (2015)) that arises from subrogation (whether such subrogation is contractual, equitable, or statutory), assignment (whether such assignment is contractual, equitable, or statutory), or otherwise in connection with payments made or to be made by the applicable insurer to insured tort victims, and whether arising as a matter of state or federal law, including, without limitation, under section 509 of the Bankruptcy Code, including attorneys' fees and interest. For the avoidance of doubt, Subrogation Wildfire Claims shall include both "Paid" and "Reserved" claims, each as defined in the Subrogation Claims RSA. Subrogation Wildfire Claims shall not include (a) the claims of any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code) or (b) any Fire Claim asserting direct injury to a fire victim, regardless of whether the claimant is an insured and has received or will receive a recovery from their insurer, and any such claims are not the subject of, or compromised under, the Subrogation Claims RSA.

**Subrogation Butte Fire Claim** means any Fire Claim arising from the Butte Fire (2015) that arises from subrogation (whether such subrogation is contractual, equitable, or statutory), assignment (whether such assignment is contractual, equitable, or statutory), or otherwise in connection with payments made or to be made by the applicable insurer to insured tort victims, and whether arising as a matter of state or federal law, including, without limitation, under section 509 of the Bankruptcy Code, including attorneys' fees and interest. Subrogation Butte Fire Claims shall not include the claims of any Governmental Unit (as defined in section 101(27) of the Bankruptcy Code).

## III.  BACKGROUND

PG&E commenced its chapter 11 cases on January 29, 2019, following a series of devastating wildfires in Northern California in 2017 and 2018. A key goal of the chapter 11 cases was "the need for an orderly, fair, and expeditious process to assess and resolve PG&E's potential liabilities resulting from the 2017 and 2018 wildfires". *Amended Declaration of Jason P. Wells In Support of First Day Motions and Related Relief*, Bankr. Dkt. No. 263 at 4 (January 31, 2019). On July 18, 2019, the Debtors sought the Bankruptcy Court's approval of procedures for the estimation of the Fire Claims under 11 U.S.C. § 502(c), which makes the estimation of unliquidated claims mandatory when it avoids undue delay in the administration of the chapter 11 cases. *See Debtors' Mot. Pursuant to 11 U.S.C. §§ 105(a) and 502(c) For the Establishment of Wildfire Claims Estimation Procedures*, Bankr. Dkt. No. 3091 (July 18, 2019) (the "**Estimation Motion**"). On August 23, 2019, upon

recommendation by Bankruptcy Judge Dennis Montali, this Court partially withdrew the reference from the Bankruptcy Court to estimate the Fire Claims under 28 U.S.C. § 157(b) and 11 U.S.C. § 502(c). *See Order Adopting Recommendation for Withdrawal of Reference of Proceeding in Part; Order of Assignment*, Bankr. Dkt. No. 3671 (Aug. 22, 2019). The Parties prepared for a two-week estimation hearing to determine the aggregate value of the Fire Claims, set to begin on February 18, 2020 (the "**Estimation Proceedings**").

In September 2019, the Debtors reached a settlement of Fire Claims (as defined above) held by the Ad Hoc Committee of Subrogation Claim Holders (the "**Subrogation Group**"). *See Debtors' Mot. for Entry of Order Pursuant to 11 U.S.C. § 363(b) and 105(a) and Fed. R. Bankr. P. 6004 and 9019 Authorizing Debtors to Enter Restructuring Support Agreement with Consenting Subrogation Claimholders*, Bankr. Dkt. No. 3992 (Sept. 24, 2019) (the "**Subrogation RSA**"). In the Subrogation RSA, the Debtors and the Subrogation Group agreed to an amount of $11 billion versus a total claimed amount of over $20 billion to settle the subrogation Fire Claims. *Id.* at 7. Fire Claims held by other entities, for whom the TCC acts as a fiduciary, remained outstanding and were the subject of the Estimation Proceedings pending before this Court.

On December 6, 2019, following good faith negotiations with the aid of a court-appointed mediator, the Debtors, the Shareholder Proponents of the Plan, the TCC and attorneys representing over 70% of individual holders of Fire Victim Claims reached a settlement of the amount and form of consideration to be provided to satisfy the Fire Victim Claims, as well as other terms and conditions, all of which were embodied in the Tort Claimant RSA. In the Tort Claimant RSA, the Parties agreed to the establishment of the Fire Victim Trust under the Plan. PG&E also agreed to assign its rights and causes of action against, among others, third party contractors to the Fire Victim Trust. *See* Tort Claimant RSA, Dkt. No. 5038-1. The parties to the Tort Claimant RSA also exchanged other consideration to support the settlement. Among other things, (a) the Debtors agreed to settle certain pending individual claims relating to the Tubbs fire that were scheduled to go to trial in January 2020, (b) the TCC agreed to support the Plan, including providing a letter to holders of Fire Victim

Claims recommending that they vote to accept the Plan, (c) attorneys representing over 70% of individual holders of Fire Victim Claims agreed to use reasonable efforts to advise and recommend to their clients to support and vote to accept the Plan, and (d) all parties agreed to refrain from taking actions that would delay, impede or interfere with confirmation of the Plan.[4]

Under the terms of the Tort Claimant RSA, within three days of the entry of an order by the Bankruptcy Court approving the Debtors' disclosure statement, the Debtors must seek an "order approving settlement of the Estimation Matters, pursuant to Federal Rule of Bankruptcy Procedure 9019 and Section 502(c) of the Bankruptcy Code, which shall provide for the aggregate estimation and aggregate allocation of the Fire Victim Claims in the amount of the Aggregate Fire Victim Consideration for all purposes in these Chapter 11 Cases (including, without limitation, for distribution to the Fire Victim Trust under the Amended Plan)". *See* Tort Claimant RSA, Dkt. No. 5038-1 at § 2(e). Neither the Debtors nor the Shareholder Proponents would have agreed to estimate the Fire Victim Claims at $13.5 billion unless all of the terms and conditions contained the Tort Claimant RSA, including the satisfaction of the Consenting Fire Claimants Threshold vote, were part of the same integrated agreement. For these reasons, the entry of an order estimating the Fire Victim Claims at $13.5 billion is expressly conditioned on the prior satisfaction of the Consenting Fire Claimants Threshold vote. The hearing on the Motion is to be set no later than the date of the hearing on confirmation of the Plan, which is scheduled to begin on May 27, 2019.

The Parties filed a motion in the Bankruptcy Court to approve the Tort Claimant RSA pursuant to Fed. R. Bankr. P. 9019 and 11 U.S.C. § 363(b) on Dec. 9, 2019. *See Debtors' Mot. Pursuant to 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 and 9019 Authorizing the Debtors and*

---

[4] The Debtors reserve all rights to terminate the Tort Claimant RSA based on any existing or future default by the TCC or any other signatory. The consideration the Debtors bargained for in the Tort Claimant RSA is premised on compliance by all parties with the terms of that agreement and satisfaction of the Consenting Fire Claimants Threshold vote. For that reason, the Debtors are not seeking a hearing on this Motion until May 21, 2020, the Thursday preceding the hearing on confirmation of the Plan.

DEBTORS' MOTION TO ESTABLISH THE ESTIMATED AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES
CIVIL CASE NO. 19-05257 (JD)

*TCC to Enter into Restructuring Support Agreement*, Dkt. No. 5038 (Dec. 9, 2019). On Dec. 19, 2019, after a hearing on the matter, the Bankruptcy Court approved the Tort Claimant RSA. *See Order Authorizing Debtors to Enter into Restructuring Support Agreement with TCC, Consenting Fire Claimant Professionals, and Shareholder Proponents*, Bankr. Dkt. No. 5174 (Dec. 19, 2019) ("**Order Approving Tort Claimant RSA**"). The Parties requested that this Court order the case stayed pending further order. On Dec. 20, 2019, this Court granted the request and vacated the Feb. 18, 2020 estimation hearing and all pre-hearing dates. *See Docket Order*, Dkt. No. 276 (Dec. 20, 2019).[5]

The Debtors filed an Amended Plan of Reorganization in the Bankruptcy Court on March 16, 2020. *See Amended Plan of Reorganization*, Dkt. No. 6320 (Mar. 16, 2020). The Debtors also filed an amended disclosure statement for that plan on March 16, 2019. *Amended Disclosure Statement*, Dkt. No. 6322 (Mar. 16, 2020). The Bankruptcy Court approved the disclosure statement on March 17, 2020. *Order Approving Debtors' Disclosure Statement and Solicitation Procedures*, Dkt. No. 6340 (Mar. 17, 2020). In accordance with the terms of the Tort Claimant RSA, the Debtors are now filing this Motion.

### IV. THE COURT SHOULD ESTIMATE THE FIRE VICTIM CLAIMS AT THE STIPULATED AMOUNT AGREED TO BY THE PARTIES IN THE TORT CLAIMANT RSA

Estimation under 11 U.S.C. § 502(c) is "a summary procedure whereby the Court *estimates* the value of a claim. A bankruptcy court need only reasonably estimate the probable value of a claim." *In re N. Am. Health Care, Inc.* 544 B.R. 684, 688 (C.D. Cal. 2016). Congress did not impose any specific procedural requirements under § 502(c). Instead, courts have "broad discretion" over the methods to be used for estimation and the determination of the value of the claims. *In re Corey*, 892 F.2d 829, 834 (9th Cir. 1989). After satisfaction of all relevant conditions precedent, including the Consenting Fire Claimants Threshold vote, this Court should estimate the Fire Victim Claims in the amount agreed to by the Parties in the Tort Claimant RSA.

---

[5] "Dkt. No." refers to documents filed in these proceeding, *In re PG&E Corp. and Pacific Gas & Electric Co.*, No. 19-cv-05257-JD (N.D. Cal.).

    The settlement of the Parties effectively liquidates the value of the claims for the purposes of estimation under § 502(c). Indeed, this Court has indicated that the exercise of claims estimation, which takes into account projected damages and liability, should be akin to determining the amount for which the parties would likely settle their claims. *See Order No. 1 Re Estimation Proceedings*, Dkt. No. 112 at 3 (Oct. 9, 2019) (directing the parties, through the Estimation Proceedings, to "discount an ultimate liability figure by a percentage reflecting litigation risks at trial, which is essentially how most class action cases are settled".) The Debtors, the TCC and the Bankruptcy Court have agreed that the goal of estimation is to approximate the settlement value of a claim. (*See e.g.*, Aug. 7, 2019 Bankr. Hear'g Tr. at 45:9-20 (TCC counsel explaining that "settlement data is the most reliable information that you can use to estimate claims"); *id.* at 70:11-71:16 (Judge Montali explaining that prior settlement data is relevant for the purpose of estimation)); *Amended Joint Case Management Statement of Debtors and TCC in Advance of Oct. 7, 2019 Status Conference*, Dkt. No. 81 at 24 (Sept. 30, 2019) (TCC's proposal to use PG&E's past settlement figures "as benchmarks" and evidence of "damage figures that would be appropriate to compensate the victims of the [Fires] and . . . show PG&E's settlement behavior when faced with potential liability"); (Oct. 7, 2019 Hear'g Tr. at 15:14-16 (TCC counsel stating that the task of estimation proceedings is modelling "settlement behavior" based on precedent from the Butte Fire); Oct. 21, 2019 Hear'g Tr. 13:16-14:2 (Debtors' counsel agreeing with TCC counsel that damages allocations from past settlements are "informative of the value of those claims here")).

    Likewise, in estimating the value of a claim, courts have looked to the probable settlement value of the claims. *In re Eagle-Picher Indus., Inc.*, 189 B.R. 681, 686 (Bankr. S.D. Ohio 1995), *as amended* (Dec. 14, 1995) (estimation should focus on "ascertain[ing] with some degree of accuracy what the settlement figures for [the unliquidated] claims would be had they been resolved prepetition"); *In re Fed.-Mogul Glob. Inc.*, 330 B.R. 133, 157 (D. Del. 2005) (same). In order to approximate the settlement value of claims, courts often look to the value of a debtor's historical settlements from similar cases to reach an estimate of unliquidated claims under § 502(c). *See e.g.*,

*Owens Corning v. Credit Suisse First Bos.*, 322 B.R. 719, 721 (D. Del. 2005) (debtor's "extensive pre-bankruptcy history of asbestos litigation can serve as a reliable guide to the validity and value of pending and future claims"); *Eagle-Picher*, 189 B.R. at 691 ("Valuation of claims should be based upon settlement values for claims close to the filing date of the bankruptcy case"); *In re Specialty Prods. Holding Corp.*, No. BR 10–11779–JKF, 2013 WL 2177694 at *1-3 (Bankr. D. Del. May 20, 2012) (estimating aggregate value of asbestos claims based on debtors' settlement history).

As this Court noted, the Parties have reached an actual settlement, embodied in the Tort Claimant RSA, which has been approved by the Bankruptcy Court, and the amount agreed to by the Parties thus serves as the best evidence of the reasonable value of the claims for the purpose of estimation. (*See e.g.*, Dec. 17, 2019, District Court Status Conference Tr. at 9:2-11 ("[W]e started this estimation process by looking at other settlements and inferring from those other settlements what the value would be here. Now we have the gold standard. You have actually settled.")). The Bankruptcy Court has approved the Tort Claimant RSA under Fed. R. Bankr. P. 9019 and 11 U.S.C. § 363(b) and found that it "represents a valid and sound exercise of the Debtors' business judgment", after a hearing on the matter. *See* Order Approving Tort Claimant RSA, Bankr. Dkt. No. 5174 at 3. Fed. R. Bankr. P. 9019 requires that a settlement or compromise be "fair and equitable" and "in the best interest of the [debtor's] estate." *In re A & C Properties*, 784 F.2d 1377, 1381-82 (9th Cir. 1986).

Accordingly, following the occurrence of all relevant conditions precedent (including the satisfaction of the Consenting Fire Claimants Threshold vote), this Court should adopt the $13.5 billion amount as the estimated amount of the Fire Victim Claims for all purposes of the Debtors' chapter 11 proceedings (including, without limitation, for distribution to the Fire Victim Trust under the Plan), and conclude the estimation proceedings.

Dated: March 20, 2020

**WEIL, GOTSHAL & MANGES LLP**
**CRAVATH, SWAINE & MOORE LLP**
**KELLER BENVENUTTI & KIM LLP**

/s/ *Kevin J. Orsini*
Kevin J. Orsini

*Attorneys for Debtors and Debtors in Possession*

"Pursuant to Local Rule 5-1(i)(3), I, Thomas B. Rupp, attest that concurrence in filing this document has been obtained from the other signatories."

KELLER BENVENUTTI KIM LLP

/s/ *Thomas B. Rupp*
Thomas B. Rupp