Jeremiah F. Hallisey, Esq. (SBN 40001)
Karen J. Chedister, Esq. (SBN 99473)
HALLISEY & JOHNSON, P.C.
465 California Street, Suite 405
San Francisco, CA 94104
Tel:   (415) 433-5300
Fax:   (415) 230-5792

Richard A. Lapping (SBN 107496)
TRODELLA & LAPPING, LLP
540 Pacific Avenue
San Francisco, CA 94133-4608
Telephone: (415) 399-1015
Email:  rich@trodellalapping.com

Co-Counsel for Creditors
KAREN ROBERDS and ANITA FREEMAN,
for themselves and on behalf of all others similarly,
situated, WILLIAM N. STEEL, for himself and on
behalf of all others similarly situated;
WILLIAM O'BRIEN, MING O'BRIEN,
FUGUAN O'BRIEN; MICHAEL HEINSTEIN,
KYE HEINSTEIN; CLINTON REILLY,
Class Claimant GER HOSPITALITY, LLC,
and RICHARD CARPENETI

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>-and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Civil Case No. 19-05257 (JD)<br><br>Bankruptcy Case No. 19-30088 (DM)<br><br>**DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES**<br>Date:  May 21, 2020<br>Time:  10:00 a.m.<br>Ctrm.:  11<br>Judge:  Hon. James Donato |

1

. DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

I, ERIC LOWREY, CIRA, declare as follows:

1. I am a restructuring professional with over 15 years of financial and strategic advisory experience, particularly to companies in the power and utilities industry, and am a Certified Restructuring and Insolvency Advisor (CIRA) by the Association of Insolvency & Restructuring Advisors. I have led the day-to-day work on engagements for Jefferies Financial Group, Miller Buckfire & Co., PwC Advisory Services, and New Harbor Incorporated and been a member of the investment banking groups at Deutsche Bank and Barclays. I have advised companies, creditors and other stakeholders on the negotiation and execution of in-court and out-of-court restructurings and issues related to capital structure, financing, liquidity, and valuation, and advised distressed companies, official creditor and equity committees, and investors on restructurings in the consumer, energy, healthcare, and metals and mining industries. Each restructuring engagement on which I advised involved the analysis of detailed financial data and projections, which I conducted and/or oversaw. I have a BA in Economics from Boston College (*Magna Cum Laude*) and an MBA from Columbia University.

2. This Declaration pertains to the Aggregate Fire Victim Consideration to be used to fund the Fire Victim Trust under the Plan, as defined below, for the benefit of all of the individual Fire Victim Claimants and is offered in support of the Objection by Certain Fire Victims to Debtors' Motion Pursuant t 11 U.S.C. 105(A) And 502(C) to Establish Amount of Fire Victim Claims for All Purposes of the Chapter 11 Case.

3. I was asked to review and analyze the Aggregate Fire Victim Consideration to be used to fund the Fire Victim Trust as described in the Disclosure Statement for the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization dated March 17, 2020 (the "Plan"). Pursuant to the Plan filed, the consideration to be used to fund the Fire Victim Trust includes $13.5 billion[1], consisting of $5.4 billion in cash, $1.35 billion in deferred cash, and $6.75 billion in common stock of Reorganized PG&E Corp. (the "Fire Victim Equity").

4. I have reviewed numerous documents which constitute or relate to the above-mentioned Plan of Reorganization and the Aggregate Fire Victim Consideration thereunder.

2

DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

Documents reviewed include, but are not limited to:

- The Disclosure Statement for the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization
- The Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization
- The Supplement to the Disclosure Statement for the Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization (the "Supplement")
- The Tort Claimants Restructuring Support Agreement (the "Tort Claimant RSA")
- Various news and research reports relating to PG&E Corporation, its bankruptcy proceedings, and the power and utilities industry

5.  As more fully set out in the paragraphs below, my analysis and conclusions are (1) the value of the consideration to be transferred to the Fire Victim Trust is now substantially less than $13.5 billion[(1)]; and (2) the current unprecedented economic conditions put the value and timing of the consideration to be transferred to the Fire Victim Trust at risk of reduction and/or payment delay.   Specifically,

- The funding for the five, primary creditor/claimant groups other than the individual Fire Victim Claimants is 100% cash (Please see **Exhibit A**, which I prepared and lists the respective claimant groups and their settlement amounts). The consideration[(1)] to be transferred to the Victim Trust to satisfy individual Fire Victim Claims is 40% cash, 10% deferred cash and 50% new common stock in the Reorganized PG&E Corp., which exposes the Fire Victim Claimants to significant risk of value reduction prior to receipt.
- The estimated value of the Victim Equity to be transferred to the Victim Trust has fluctuated downward since the Tort Claimants RSA was entered into in December 2019 (See **Exhibit B**, which I prepared and sets out a summary of the change in value). The amount of $6.75 billion as described in the TCC Claimants RSA is a component in a formula used to calculate the percentage of the common stock in Reorganized PG&E Corporation's equity to be contributed to the Fire Victim Trust, subject to a minimum of

3
DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

20.9%. This formula contemplates valuing the common stock of Reorganized PG&E as a function of the Normalized Net Income for 2021, as defined in the Plan, multiplied by 14.9. Using the Debtors forecast of $2.04 billion for 2021 non-GAAP Core Earnings included in the Debtors' updated financial projections included (the "Supplement") would imply an equity value of $30.4 billion of which $6.75 billion would represent 22.2%. To estimate what this may be worth one could use Edison International (NYSE: EIX) as a proxy for how the equity market may value PG&E's common equity.

- Currently, EIX trades at 10.7 multiplied by the consensus 2021 earnings estimates for EIX[(2)]. Multiplying the 2021 non-GAAP Core Earnings of $2.04 billion by the same multiple of 10.7 would imply an equity market capitalization of approximately $21.8 billion for Reorganized PG&E, implying a value of approximately $4.85 billion for the Victim Equity to be contributed to the Fire Victim Trust. However, this value is still at significant risk of further decline in the wake of the COVID-19 pandemic as utility companies face the potential to underperform forecasts in the near-term and other potential financial challenges as a result, such as reduced liquidity due to "no disconnect" orders and/or agreements.

- Additionally, there are a number of PG&E-specific issues that may cause the market to value Reorganized PG&E at lower multiple than the one at which Edison International trades. One of the most notable of these issues is that PG&E has agreed not to pay dividends, an attribute typically sought by utility investors, for a minimum of three years.

- The $1.35 billion of deferred cash payments to the Fire Victim Trust (to be funded through an as of yet uncertain securitization and/or by the realization of cash tax benefits resulting from tax attributes of the Debtors) is exposed to several risks. Those risks include the potential for a change of control as part of the Debtors' equity financing ,which could limit the company's ability to use its NOLs to offset future taxes; the failure of Reorganized PG&E to generate earnings sufficient to realize the requisite cash tax benefits necessary to fund the deferred cash payments; and general business and credit risk due to among other things potential future wildfire liability claims that could be disallowed or not covered in a

4

DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

timely manner by the Go-Forward Wildfire Fund;

6. The timing of contributions to the Fire Victim Trust is also uncertain. Expectations for the timing of the initial cash and equity contributions have been based on the Debtors' Plan of Reorganization becoming effective on or before August 29, 2020.  However, under the recently announced as Case Resolution Contingency Process the date by which the Debtors emerge from bankruptcy could be as late as December 31, 2020.

7. PG&E's ability to successfully finance its exit from bankruptcy and fund the cash transfer to the Fire Victim Trust was not 100% certain prior to the recent health and economic crises. With the recent economic downturn and disruption in the financial markets caused by the COVID-19 pandemic the risk that the Debtors will fail to raise the financing necessary to exit bankruptcy on the timeline contemplated at the time the TCC Claimants RSA was entered into has increased substantially.

8. Should PG&E fail to emerge from bankruptcy by December 31, 2020 and be required to initiate a sale process for the company, as agreed to and outlined in the Case Resolution Contingency Process, the resulting sale could further delay and potentially negatively impact the funding of the Fire Victim Trust. The potential for such a scenario creates additional risk and uncertainty for the payments agreed under the TCC Claimants RSA as there is no guarantee that a sale process would result in sale proceeds sufficient to meet the Debtors' commitments under the TCC Claimant RSA.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 3, 2020 at New York, New York.

                              /s/ Eric Lowrey
                              ERIC LOWREY

Pursuant to Local Rule 5-1(i)(3), I attest that concurrence in filing this document has been obtained from the signatory, Eric Lowrey.

                              /s/ Jeremiah F. Hallisey
                              Jeremiah F. Hallisey

(1) Exclusive of certain rights and causes of action to be transferred to Victim Trust under the Plan

---

5
DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES

(2) The 10.7 multiple of earnings for Edison International (NYSE: EIX) is based on the consensus 2021 earnings estimates and closing stock price for EIX as of April 3, 2020 per CapIQ.

**EXHIBIT A TO**

**DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES**

# Individual Fire Victims the Only Claimant Group to Receive Deferred Cash & Equity

**While every other claimant group is to receive 100% cash or secured debt, 60% of the consideration to be transferred to the Victim Trust is exposed to the risk of diminution of value prior to receipt**

*$Millions*

| CLAIMANT GROUPS | TREATMENT OF CLAIMS | | | TOTAL |
|---|---|---|---|---|
| | Cash / New Debt | Deferred Cash | Equity | |
| Debtor-In-Possession Financing | 2,000 | 0 | 0 | 2,000 |
| Trade Claims and Other Costs | 2,300 | 0 | 0 | 2,300 |
| Prepetition Debt & Accrued Interest | 23,450 | 0 | 0 | 23,450 |
| Subrogated Wildfire Liability Claims | 11,000 | 0 | 0 | 11,000 |
| Public Entities Wildfire Liability Claims | 1,000 | 0 | 0 | 1,000 |
| **Individual Fire Victim Liability Claims** | **5,400** | **1,350** | **6,750** | **13,500** |
| | | | | **$53,250** |

- **Individual victims** are the **only claimants to receive at-risk deferred cash and/or equity**

- The $1.35 billion of deferred cash and the Fire Victim Equity are exposed to significant risks

    – Fire Victim Equity to be contributed to the Victim Trust currently estimated to be worth approximately $4.85 billion, materially less than $6.75 billion, and it could decline further

    – Significant risk of negative impacts due to current economic downturn, including the potential for the Debtors' earnings forecast to be reduced and reduced liquidity due to customer non-payment

    – Cash tax benefits needed to fund $1.35 billion of deferred cash payments may not be realized

    – Potential future wildfire liability claims made against PG&E would be senior to Victim Equity

Source: Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization.
1) Based on uses of $59.0 billion in PG&E POR, including $1.35 billion in deferred cash for the Victim Trust. Not shown is the $5.0 billion wildfire fund contribution and $0.75 billion of B/S cash.
2) Comprised of $13.875 billion in cash and $9.575 billion in new secured debt. The $9.575 billion of new, secured debt to be senior in priority to deferred cash and equity yet to be contributed to Victim Trust upon PG&E's exit from bankruptcy. Secured debt will also be senior in priority to any future wildfire liability claims filed against PG&E (deferred cash and equity will not be).

**EXHIBIT B TO**

**DECLARATION OF ERIC LOWREY, CIRA IN SUPPORT OF OBJECTION BY CERTAIN FIRE VICTIMS TO DEBTORS' MOTION PURSUANT TO 11 U.S.C. 105(A) AND 502(C) TO ESTABLISH AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES OF THE CHAPTER 11 CASES**

# Value of Equity Allocated to Individual Victims Estimated to be $4.85B, Not $6.75B[1]

**As of early April 2020, the value of the equity in Reorganized PG&E Corp. to be contributed to the Victim Trust estimated at only $4.85 billion, 28% (or $1.9 billion) less than the headline amount of $6.75 billion**



1) Value of Fire Victim Equity estimated using Edison International (NYSE: EIX) as a proxy, which trades at a multiple of 10.7x consensus 2021 earnings estimates as of April 3, 2020 per CapIQ.
2) Based on 2021 forecasted earnings of $2.04 billion per the Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization.
3) Based on 2021 forecasted earnings multiplied by 14.9 per the Disclosure Statement for Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization.