Dennis F. Dunne (admitted *pro hac vice*)
Samuel A. Khalil (admitted *pro hac vice*)
MILBANK LLP
55 Hudson Yards
New York, New York 10001-2163
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*and*

Gregory A. Bray (SBN 115367)
Thomas R. Kreller (SBN 161922)
MILBANK LLP
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
Telephone: (424) 386-4000
Facsimile: (213) 629-5063

*Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| In re:<br><br>PG&E CORPORATION<br><br>- and -<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>Debtors. | Civil Case No. 19-cv-05257 (JD)<br><br>Bankruptcy Case No. 19-bk-30088 (DM)<br><br>Chapter 11<br><br>(Lead Case) (Jointly Administered)<br><br>**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT REGARDING RESPONSE OF OFFICIAL COMMITTEE OF TORT CLAIMANTS TO DEBTORS' MOTION TO ESTABLISH ESTIMATED AMOUNT OF FIRE VICTIM CLAIMS FOR ALL PURPOSES**<br><br>Date: May 21, 2020<br>Time: 10:00 a.m. (Pacific Time)<br>Place: Courtroom 11<br>Judge: Hon. James Donato |

The Official Committee of Unsecured Creditors (the "Creditors' Committee") appointed in the above-captioned chapter 11 cases, by its attorneys Milbank LLP, respectfully states as follows regarding the *Response of the Official Committee of Tort Claimants to Debtors' Motion Pursuant to 11 U.S.C. §§ 105(A) and 502(C) to Establish Estimated Amount of Fire Victim Claims for All Purposes of the Chapter 11 Cases* (the "TCC Response") [Docket No. 295]:[1]

**STATEMENT**

Consistent with the settlement embodied in the TCC RSA,[2] the Court should estimate the Fire Victim Claims at an aggregate value of $13.5 billion. But the Court should ***not*** order the additional relief requested by the TCC, including making any determinations regarding the form and quantum of currency that the recovery on these allowed Fire Victim Claims should receive under the Debtors' chapter 11 plan.

In December 2019, the Court described the settlement of the Fire Victim Claims embodied in the TCC RSA (proposed at that time) as the "gold standard" for estimation data points and signaled that estimating the Fire Victim Claims at the settled amount ***would conclude the Court's charge with respect to estimation.*** *See* Dec. 17, 2019 Hr'g Tr. at 6:18-23 (Court: "I don't think there's anything left [to do] here either way . . . settlement gets approved, you're done. Settlement is not approved, you have effectively estimated the loss at $13.5 billion. So what else is there to do?").

No party took issue with the Court's view and, indeed, counsel for the TCC was ready to close the estimation proceedings in December. *See id.* at 9:15-22 (Court: "[I]s there any reason just not to close up shop and send you on your way to . . . the Bankruptcy Court[?]"; Mr. Julian: "I don't believe there is any reason not to do that.").

The TCC did not advise the Court then, as it does now, that the TCC believes there ***is*** more to do; that we are ***not*** done. According to the TCC, the Court should not only estimate the aggregate amount of Fire Victim Claims at $13.5 billion for allowance purposes, but ***also*** should

---

[1] On April 3, 2020, the Creditors' Committee filed a *Statement and Reservation of Rights* [Docket No. 300], reserving its rights to respond to the TCC Response.

[2] Capitalized terms not defined herein have the meanings ascribed to them in the *Debtors' and Shareholder Proponents' Joint Chapter 11 Plan of Reorganization Dated March 16, 2020* (the "Plan") [Bankr. Docket No. 6320].

prescribe the actual ***recovery*** on account of those Claims, including the form and quantum of currency that recovery should take. *See* TCC Response at 12 (asking the Court to order that the estimated $13.5 billion claim amount must be "funded with $6.75 billion in cash, the PG&E stock valued at $6.75 billion . . . so long as $6.75 billion of cash and the $6.75 billion of PG&E stock each have a value of $6.75 billion"). The TCC asserts that the Court must include these additional provisions in its order because they would be consistent with the "intent of the Parties" as purportedly reflected in, among other places, "the plain terms" of the TCC RSA. TCC Response at 6. "Anything less," according to the TCC, "will prevent the Bankruptcy Court from being able to find that the Debtors' Plan is fair, equitable, and in good faith under Section 1129 of the Bankruptcy Code…" *Id.*

This request for an unwarranted (and unnecessary) expansion of the Court's jurisdiction must be denied. The order partially withdrawing the reference from the Bankruptcy Court authorized this Court to decide "[t]he 11 U.S.C. § 502(c) estimation of unliquidated personal injury and wrongful death claims against Debtors for all purposes under 28 U.S.C. § 157(b)(2)." Order Adopting Recommendation for Withdrawal of Reference of Proceeding in Part, entered Aug. 22, 2019 (the "Withdrawal Order") [Bankr. Docket No. 3671] at 2:9-11. And 11 U.S.C. § 502(c) authorizes the Court to "estimate . . . contingent or unliquidated claims" for purposes of ***allowance***. Neither the Withdrawal Order nor the statute ***further*** authorizes the Court to dictate the form or value of the ***recovery*** on the estimated allowed amount of the Fire Victim Claims.[3]

Those matters, even if they were relevant here (and they are not), are governed by the TCC RSA, over which the ***Bankruptcy Court*** has retained exclusive jurisdiction. *See* TCC RSA [Bankr. Docket No. 5038-1] at § 8(b). Thus, the many pages the TCC devotes to the alleged breaches of the TCC RSA (including complaints about the value and the currency of the recovery on the settled Fire Victim Claims) are not properly addressed to this Court. *See* TCC Response 3-7. Nor, as

---

3 Case law is in accord. *See, e.g.*, *In re N. Am. Health Care, Inc.*, 544 B.R. 684, 689 (Bankr. C.D. Cal. 2016) ( "the claims should be estimated in the aggregate"); *In re Fed.-Mogul Global, Inc.*, 330 B.R. 133, 154 (D. Del. 2005) (estimating claims in the "aggregate allowable amount");*In re Garlock Sealing Tech. LLC*, 2017 WL 2539412, at *9 (W.D.N.C. June 12, 2017) (noting the court estimated the aggregate amount of claims); *In re G-I Holdings, Inc.*, 323 B.R. 583, 622-23 (Bankr. D.N.J. 2005) (same).

should be obvious, should the Court make these extracurricular determinations to influence the Bankruptcy Court's determinations under Section 1129 of the Bankruptcy Code.

The TCC Response provides no basis to depart from, or expand on, what the Withdrawal Order, the Bankruptcy Code, the Court, and even the TCC acknowledge is the Court's narrow charge with respect to estimation. Accordingly, the Court should limit its order on the Debtors' motion to estimating the Fire Victim Claims at the settlement amount embodied in the TCC RSA ($13.5 billion). Beyond this, as the Court correctly observed after learning of the parties' aggregate settlement, there is simply nothing "left to do here."[4]

DATED: April 10, 2020

MILBANK LLP

*/s/ Gregory A. Bray*
DENNIS F. DUNNE
SAMUEL A. KHALIL
GREGORY A. BRAY
THOMAS R. KRELLER

*Counsel for the Official Committee of Unsecured Creditors*

4 If the Court accepts the TCC's invitation to order the form and quantum of recoveries that Fire Victim Claimants should receive, then the Court should also condition its order on the satisfaction of the conditions precedent set forth in the TCC RSA, including that the class of the Fire Victim Claims votes in favor of the Plan and that the Plan is confirmed by June 30, 2020. Doing otherwise may adversely and irreversibly limit the Plan recovery available to the Debtors' unsecured creditors if the Plan fails for any reason.