Pages 1 - 25

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable James Donato, Judge

```
IN RE: PG&E CORPORATION and     )
PACIFIC GAS AND ELECTRIC        )
COMPANY,                        )
                                )
              Debtors.          )     NO. 19-05257 JD
                                )
_____)
```

San Francisco, California
Thursday, April 16, 2020

**<u>TRANSCRIPT OF PROCEEDINGS BY ZOOM</u>**

**<u>APPEARANCES BY ZOOM</u>:**

For Creditor Committee Official Committee of Tort Claimants:
    BAKER & HOSTETLER LLP
    600 Montgomery Street - Suite 3100
    San Francisco, California  94111
   **BY:  ROBERT A. JULIAN, ATTORNEY AT LAW**

For Ad Hoc Group of Subrogation Claim Holders :
    WILLKIE, FARR & GALLAGHER LLP
    878 Seventh Avenue
    New York, New York  10019
   **BY:  BENJAMIN P. McCALLEN, ATTORNEY AT LAW**

For Angela Loo and Plaintiffs-Creditors:
    LIEFF, CABRASER, HEIMANN & BERNSTEIN LLP
    275 Battery Street - 29th Floor
    San Francisco, California  94111
   **BY:  ELIZABETH J. CABRASER, ATTORNEY AT LAW**

**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
    Official Reporter

```
 1   APPEARANCES BY ZOOM:   (CONTINUED)

 2   For Creditor California State Agencies:
                         FELDERSTEIN, FITZGERALD, WILLOUGHBY
 3                          PASCUZZI & RIOS LLP
                         500 Capitol Mall - Suite 2250
 4                       Sacramento, California  95814
                  BY:  PAUL J. PASCUZZI, ATTORNEY AT LAW
 5
     For Creditor Federal Agencies FEMA, Department of Agriculture,
 6   and Department of Interior:
                         U.S. DEPARTMENT OF JUSTICE
 7                       Civil Division
                         P.O. Box 875
 8                       Ben Franklin Station
                         Washington, D.C.  20044
 9                BY:  MATTHEW J. TROY, ATTORNEY AT LAW

10   For PG&E Equity Holders:
                         JONES DAY
11                       555 South Flower Street - 50th Floor
                         Los Angeles, California  90071
12                BY:  BRUCE BENNETT, ATTORNEY AT LAW

13   For GER Hospitality, LLC, and Miscellaneous Plaintiffs:
                         HALLISEY AND JOHNSON PC
14                       465 California Street - Suite 405
                         San Francisco, California  94104
15                BY:  JEREMIAH F. HALLISEY, ATTORNEY AT LAW

16   For GER Hospitality, LLC:
                         LAW OFFICES OF FRANCIS O. SCARPULLA
17                       456 Montgomery Street - 17th Floor
                         San Francisco, California  94104
18                BY:  FRANCIS O. SCARPULLA, ATTORNEY AT LAW

19   For Ad Hoc Committee of Senior Unsecured Noteholders of Pacific
     Gas and Electric Company:
20                        AKIN, GUMP, STRAUSS, HAUER
                           & FELD LLP
21                       One Bryant Park
                         New York, New York  10036
22                BY:  ABID QURESHI, ATTORNEY AT LAW

23

24

25
```

**APPEARANCES BY ZOOM**:   (CONTINUED)

For Creditor SLF Fire Victim Claimants:
                         SINGLETON LAW FIRM
                         450 A Street - 5th Floor
                         San Diego, California  92101
               BY:  **GERALD SINGLETON, ATTORNEY AT LAW**

For Individual Fire Victim Creditors:
                         WATTS GUERRA LLP
                         5726 W. Hausman Road - Suite 119
                         San Antonio, Texas  78249
               BY:  **MIKAL C. WATTS, ATTORNEY AT LAW**

For Creditor Adventist Health System/West and Feather River
Hospital:
                         NORTON ROSE FULBRIGHT US LLP
                         555 South Flowers Street - 41st Floor
                         Los Angeles, California  90071
               BY:  **REBECCA WINTHROP, ATTORNEY AT LAW**


For Creditor AT&T Corporation:
                         ARNOLD & PORTER KAYE SCHOLER LLP
                         250 West 55th Street
                         New York, New York  10019
               BY:  **BENJAMIN MINTZ, ATTORNEY AT LAW**

For Creditors Paradise Irrigation District, Paradise Unified
School District, Northern Recycling and Waste Services, LLC,
Northern Recycling, and Napa Recycling:
                         REED SMITH LLP
                         101 Second Street - Suite 1800
                         San Francisco, California  94105
               BY:  **DAVID E. WEISS, ATTORNEY AT LAW**

For Creditor Official Committee of Unsecured Creditors:
                         MILBANK LLP
                         55 Hudson Yards
                         New York, New York  10001
               BY:  **ALAN J. STONE, ATTORNEY AT LAW**

1   **APPEARANCES BY ZOOM**:   (CONTINUED)

2   For Creditors Jon Shepherd and Sara Shepherd:
                      WALKUP, MELODIA, KELLY & SCHOENBERGER PC
3                     650 California Street - 26th Floor
                      San Francisco, California  94108
4               BY:  **KHALDOUN A. BAGHDADI, ATTORNEY AT LAW**

5   For Debtor-in-Possession PG&E Corporation:
                      CRAVATH, SWAINE & MOORE LLP
6                     825 Eighth Avenue
                      New York, New York  10019
7               BY:  **KEVIN ORSINI, ATTORNEY AT LAW**

8                     WEIL, GOTSHAL & MANGES LLP
                      767 Fifth Avenue
9                     New York, New York  10153
                BY:  **STEPHEN KAROTKIN, ATTORNEY AT LAW**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Thursday - April 16, 2020**                          **2:00 p.m.**

**P R O C E E D I N G S**

**---oOo---**

          **THE CLERK:**  Calling Civil 19-5257, In Re PG&E

Corporation and Pacific Gas and Electric Company.

          Counsel for the defense, will you please wave and state

your appearance.

          **MR. ORSINI:**  Kevin Orsini, Cravath, Swaine & Moore, on

behalf of debtors.

          **THE CLERK:**  Okay.

          **MR. KAROTKIN:**  Stephen Karotkin, Weil, Gotshal &

Manges, on behalf of the debtors as well.

          **THE CLERK:**  Okay.  Can the -- plaintiffs' counsel, can

you also state your appearance?  What I'm going to do is call

your names and you can wave and state your name and who you

represent for the court reporter, keeping in mind this matter

is now -- is being recorded --

          **THE COURT:**  Lisa?

          **THE CLERK:**  Yes.  Hello?

          **THE COURT:**  Lisa?

          **THE CLERK:**  Yes, Judge?  Can you hear me, Judge?

          **THE COURT:**  I can hear you.  All set to go, Lisa?

          **THE CLERK:**  Yeah.  I already called the case and

they're making their appearances.  I'm going to call -- the

plaintiffs' counsel because there's so many, I'm going to call

1  them and have them wave to Jo Ann so she can see who's

2  speaking.  Okay?

3          **THE COURT:**  Sounds good.

4          **THE CLERK:**  Benjamin P. McCallen.

5          **MR. McCALLEN:**  Good afternoon.  I'm on behalf of the

6  Ad Hoc Group of Subrogation Claim Holders, Benjamin McCallen,

7  Willkie, Farr & Gallagher.

8          **THE CLERK:**  Paul J. Pascuzzi.

9          **MR. PASCUZZI:**  Good afternoon.  Paul Pascuzzi,

10 Felderstein Fitzgerald Willoughby Pascuzzi, for the California

11 state agencies.

12         **THE CLERK:**  David Weiss.

13         **MR. WEISS:**  Good afternoon, Your Honor.  David Weiss

14 on behalf of Paradise Irrigation District, Paradise School

15 District, Northern Recycling, and Napa Recycling.

16         **THE CLERK:**  Robert Julian.

17         **MR. JULIAN:**  I'm Robert Julian of Baker Hostetler

18 appearing on behalf of the Tort Committee.

19         **THE CLERK:**  Francis Scarpulla.

20         **MR. SCARPULLA:**  Good afternoon, Your Honor.  Francis

21 Scarpulla on behalf of certain fire victims.

22         **THE CLERK:**  Elizabeth Cabraser.

23         **MS. CABRASER:**  Good afternoon, Your Honor.  Elizabeth

24 Cabraser, Lieff, Cabraser, Heimann & Bernstein, for creditor

25 Angela Loo and numerous additional fire claimants.

```
 1              THE CLERK:  Jeremiah Hallisey.

 2              MR. HALLISEY:  Jeremiah Hallisey for miscellaneous

 3   plaintiffs, law firm of Hallisey & Johnson.

 4              THE CLERK:  Benjamin Mintz.

 5              MR. MINTZ:  Good afternoon.  Benjamin Mintz,

 6   Arnold & Porter, counsel for AT&T.

 7              THE CLERK:  Matthew Troy.

 8              MR. TROY:  Good afternoon, Your Honor.  Matthew Troy,

 9   United States Department of Justice, Civil Division, on behalf

10   of various federal agencies.

11              THE CLERK:  Alan Stone.

12                          (No response.)

13              THE CLERK:  Alan Stone, did you leave the call?

14                          (No response.)

15              THE CLERK:  Okay.  Gerald Singleton.

16              MR. SINGLETON:  Good afternoon, Your Honor.  Gerald

17   Singleton.  I'm appearing on behalf of over 25,000 fire victims

18   who are represented by the Singleton Law Firm, the Watts Guerra

19   firm, and are co-counsel in this matter.

20              THE CLERK:  Rebecca Winthrop.

21                          (No response.)

22              THE CLERK:  Rebecca Winthrop.

23              MR. WEISS:  I think she's having trouble hearing the

24   audio, but she's on the call.

25              THE CLERK:  Oh, okay.
```

1     Alan Stone just came on.

2          **MR. STONE:**  Yes, I did.  Alan Stone, Milbank LLP, here

3     on behalf of the Committee of Unsecured Creditors.

4          **THE CLERK:**  Bruce Bennett.

5          **MR. BENNETT:**  Your Honor, Bruce Bennett of Jones Day

6     on behalf of the shareholders.

7          **THE CLERK:**  Mr. Baghdadi.

8          **MR. BAGHDADI:**  Good afternoon, Your Honor.  Khaldoun

9     Baghdadi on behalf of certain creditors at California JCCP

10    Leadership.

11         **THE CLERK:**  And Abid Quereshi?

12         **MR. QUERESHI:**  Good afternoon, Your Honor.  Abid

13    Quereshi, Akin, Gump, Strauss, Hauer & Feld, on behalf of the

14    Ad Hoc Note Holder.

15         **THE CLERK:**  Mikal Watts.

16         **MR. WATTS:**  Good afternoon, Your Honor.  It's Mikal

17    Watts on behalf of certain fire plaintiffs.

18         **THE CLERK:**  Your Honor, I think that's everyone.

19         **THE COURT:**  Okay.  Well, good afternoon, everyone.  I

20    hope you and your families and colleagues are all doing well

21    under the circumstances.  I'm encouraged to see such a good

22    turnout today, and I'm also happy to see you're all dressed for

23    court so always a good thing.

24         My personal view is that this is probably the beginning of

25    a new culture of online court appearances, so might as well get

 1  used to this.  I think I'll be doing this going forward, and I

 2  know a number of my colleagues probably will too once we get

 3  past our current public health problems.

 4      There are a couple rules that we need to be conscious of

 5  as we get into this new world.  The first one is please keep

 6  yourself on mute unless you're talking.

 7      The second one is, just let me know when you'd like to

 8  speak.  Use the hand button on the screen or you can do it old

 9  school and just raise your hand, but wait for me to see you and

10  call on you.  I promise everybody will have a chance to talk,

11  but otherwise we'll have too many competing voices.

12      And then the last thing, just to reiterate what was in the

13  docket entry but for everybody else who might be joining as

14  well, you know, we're doing this to -- we're doing this online

15  as part of our long tradition and our commitment in the federal

16  courts keeping justice open and accessible to the public and in

17  the sunshine so that everybody can see what happens in our

18  federal courts.

19      We're doing that online today, which unfortunately does

20  leave the possibility open that someone might try to record any

21  of today's proceedings, download a snapshot or in any other way

22  preserve what we're doing.  Please keep in mind that any

23  recording of a federal court proceeding by video or

24  teleconference, including screen shots or any other audio or

25  visual copying of the hearing, is absolutely prohibited and any

1   violations of that may result in sanctions, including removal

2   of court-issued media credentials, restricted entry to future

3   hearings, and denial of entry to future hearings, and any other

4   sanctions that might be appropriate to impose.

5          So it's not meant to discourage anyone.  It's just meant

6   for us to start developing a robust and solid online court

7   culture.  And if there is a bright spot in any of this, it may

8   be that allowing our proceedings to happen online today and in

9   the future will actually increase public access and visibility

10  for people who ordinarily couldn't get down to court.  So that

11  might be a good thing.

12         All right.  Let me set the table for what I'd like to

13  discuss today.  Now, as you-all know, this case came to me in

14  September of last year when the bankruptcy withdrawal --

15  reference was withdrawn for me to estimate the unliquidated and

16  contingent claims mainly for personal injury torts and wrongful

17  death related to the firefighters.  That was under 11 United

18  States Code, Section 502(c).

19         We set up with everybody's participation, and it was a

20  wonderful display of cooperation and professionalism.  In a

21  fast-moving and complicated problem, we were able to set up a

22  very complex enterprise to start estimating those losses and

23  setting guidelines and getting us ready for my estimation

24  decision.

25         And then we hit December of last year and at our last

1    meeting, which was December 17th, counsel for PG&E, I think

2    that was Mr. Orsini, who's here with us today, said, quote

3    (reading):

4            "We've had a settlement" and, quote, "If that

5        settlement is approved and we move forward towards

6        confirmation, we will no longer need to have the

7        estimation proceedings before Your Honor that have been

8        scheduled.  We will have effectively stipulated to an

9        estimated amount that will go into the trust to satisfy

10       these claims," close quote.

11       That's the transcript at Docket Number 217, page 4.

12       I'll also note that we have a motion coming up in late

13   May.  I'm not going to get into the merits of that today, but I

14   went through that background because I want to pose the

15   question.  I'll start with Mr. Orsini.  I'm not sure why we're

16   here today.

17       **MR. ORSINI:**  Thank you, Your Honor.  Good afternoon

18   and thank you.  I echo the well wishes and extend them to the

19   Court and the Court's family and the staff and their families.

20       Your Honor, we're here on exactly the issue that I noted

21   in the transcript that you just read, which is we have a

22   stipulated estimated amount.  So when we signed the

23   restructuring support agreement that was the settlement with

24   the tort claimants committee and fire professionals

25   representing over 70 percent of the claimants, many of whom are

1   on the screen right now, one of the requirements was that we

2   come to the Court under that RSA once the settlement was

3   approved and ask for this Court to enter an order confirming

4   our stipulated estimated amount of $13.5 billion.  And that was

5   part of the requirement that was set forth in the approval

6   order that Judge Montali issued.

7          And the reason for that, Your Honor, is the same reason

8   why we were here in the first place with the withdrawal of the

9   reference because of the nature of certain personal injury

10  claims here.

11         And so what we've asked for is really quite simple.  What

12  we've asked for is if and only if the fire victim vote comes

13  in, we would like this Court to enter a very simple order that

14  confirms 13 and a half billion dollars as the aggregate

15  estimated amount for the fire victim claims.  That's it.

16  That's all we're asking for.  There's a lot of discussion about

17  other issues in the papers.

18         But if we get the vote of the fire victims, we will need

19  that order in order to bring it to the Bankruptcy Court to

20  finalize the confirmation of the plan of reorganization that's

21  currently out for vote with all of the various creditors.

22         If, on the other hand, Your Honor, the vote does not come

23  in in favor of the -- in support of the settlement that's been

24  proposed, this motion will be withdrawn.  We will not at that

25  point be asking the Court to estimate the claims of 13 and a

1   half billion dollars.  We'll have to, candidly, reassess where

2   everything stands at that point in time; and if we need to come

3   back for lengthier estimation proceedings, then we'll have to

4   come back for lengthier estimation proceedings, but that would

5   be the scenario where we weren't going forward with this

6   settlement.

7        Now, what we're not asking from this Court -- again, the

8   Court's jurisdiction here is quite narrow as the Court has said

9   a number of times.  It's here to do one thing, which is to

10  provide a number as an estimate for the aggregated claims.

11       We're not asking for any order from this Court with

12  respect to the treatment of those claims, no order from the

13  Court with respect to how the amount that the Court estimates

14  pursuant to the stipulation in the event the vote comes in is

15  actually distributed to the claimants.  All of those issues, as

16  I believe the TCC concedes, are appropriately before

17  Judge Montali.  They're all a function of the settlement

18  agreement he's approved and the process for confirming a plan

19  of reorganization.

20       Now, honestly, Your Honor, I think it's important to

21  understand what's going on with respect to a lot of these

22  filings.

23            **THE COURT:**  Let me -- I'm sorry.  Let me just jump in.

24            **MR. ORSINI:**  Yes, Your Honor.

25            **THE COURT:**  So I am with you, I think, on what might

1    happen if this arrangement/settlement falls apart.  It seems to
2    me that -- no one is hoping for that of course, but it seems to
3    me that at that point the estimation proceedings may take on a
4    different tone, both substantively and in terms of urgency.
5    But I'm just not -- I'm not seeing, Mr. Orsini, how what you're
6    asking me to do is within that narrow band of authority that I
7    have.
8         Now, 502(c) is very clear.  I am limited to fixing or
9    liquidating contingent and unliquidated claims.  You-all are
10   past that.  You put a number on it.  And your own motion -- and
11   I know we're not getting to the merits today but it's germane
12   now -- your own motion, Docket Number 286 at page 9 says,
13   quote, (reading):
14             "A settlement of the parties has effectively" --
15        "effectively liquidates the value of the claims for the
16        purposes of estimation under Section 502," close quote.
17        You know, I have the feeling you're kind of asking me just
18   to say, yes, you're right, but that's not what's within the
19   scope of Section 502(c).
20             **MR. ORSINI:**  So let me address that, Your Honor.
21             **THE COURT:**  It's not an estimation.  That's just --
22   it's just asking me to rubber stamp -- not rubber stamp.  That
23   has a negative connotation.  It's just asking me to say, "Yes,
24   that seems fine."  I don't think that's something that 502(c)
25   contemplates.

1          **MR. ORSINI:**  So, Your Honor, let me address that

2     directly.  It's actually the withdrawal of the reference under

3     28 U.S.C. 157 that requires us to be here, and it's the reason

4     that it's built into the RSA and was part of the order that

5     Judge Montali approved.

6          And ultimately what we're asking Your Honor to do is the

7     same thing we would have asked you to do if we had that

8     complicated three-week bench trial, and that is to estimate the

9     aggregate value of the fire victim claims.

10          Now, as the Court has noted and as the law is pretty

11     clear, to use your words, Your Honor, a settlement is the gold

12     standard.  So if we get to the point where all of the

13     conditions for the settlement are actually satisfied, which the

14     most significant one that remains open is the vote of the fire

15     victims, at that point we will be asking the Court to estimate,

16     for the purposes permitted under 502(c), the aggregate claims

17     of $13.5 billion.

18          And the reason we need to do that -- and this is a common

19     practice and procedure in mass tort bankruptcies.  There are

20     other lawyers on the screen who are bankruptcy practitioners

21     who can speak more to that.  But that the reason we need the

22     Court to ultimately enter an estimated amount is in furtherance

23     of the ultimate channeling injunction that will be issued that

24     will have all of the claims of the various fire victims going

25     to the trust that's being created by the settlement and will be

1   confirmed by the Bankruptcy Court.

2       In many cases, as I understand it, Your Honor, what

3   happens is the Bankruptcy Court will enter an order estimating

4   these types of claims as part of the confirmation process, and

5   then the Article III judge will have to just sign off on that.

6   We're in a slightly different scenario here because

7   Judge Montali can't enter that order because of the

8   withdrawal -- the reference has been withdrawn.

9       And so at the end of the day, Your Honor, what we're

10  asking you to do is the same thing we've been asking you to do

11  all along.  We're asking you to estimate what the aggregate

12  value of those fire victim claims are; and if we can satisfy

13  the preconditions and the fire victim vote comes in, which we

14  believe it will, Your Honor -- early indications are people are

15  voting overwhelmingly in favor of the plan -- if the fire

16  victim vote comes in, at that point you will have, as I said

17  back in December, a stipulated estimated amount and that will

18  provide you with a record to say the appropriate estimate of

19  these claims is the settlement amount of 13 and a half billion

20  dollars.

21          THE COURT:  All right.  Mr. Julian -- let's hear from

22  the victims' lawyers.  Mr. Julian, let me start with you.

23          MR. JULIAN:  Your Honor, do you have a question for

24  me?

25          THE COURT:  Well, I mean, what's your position on what

1  you've heard so far?

2      **MR. JULIAN:**  Well, Your Honor, first you'll notice

3  that they didn't come back to you in estimation with the subro,

4  and subro claims are tied up in our claims because they stand

5  in our shoes.

6      This requirement to come back to you was the debtor's

7  insistence in the RSA, from our standpoint, in order to have a

8  contingency hanging over our heads while the voting was going

9  on yes or no.

10      Now, actually their proposed order looked okay to me

11  because it said 13.5 but then they stuck in the language about

12  "as agreed in the RSA," and we just don't think it's up to you

13  to be talking about what's agreed to in the RSA.  That would be

14  Judge Montali's position.

15      They wanted to determine the RSA was fair and so they

16  stuck that language in there.  If they had just said "Estimate

17  the 13.5," we probably wouldn't be here.  So we included our

18  positions in the case so they wouldn't be arguing we have a

19  waiver of them.

20      I would suggest that we keep the matter on calendar and

21  see what happens.

22      **THE COURT:**  All right.  Any other representatives of

23  the victims like to say anything?  Yes, Mr. Mintz.

24      **MR. MINTZ:**  Your Honor, I'm Benjamin Mintz from

25  Arnold & Porter, counsel for AT&T.  I'm speaking on behalf of

not only AT&T but also Adventist and the Paradise municipal

entities.  We filed objections to the motion that was filed.

     To Your Honor's comment, I think that the relief that's

being asked does go beyond the jurisdictional mandate.

Reference was made to 28 U.S.C. 157.  That speaks to personal

injury and wrongful death claims.

     Our clients and a number of the victims that are within

the scope of the class are not personal injury and wrongful

death claims.  We have -- we have property damage claims.  We

have claims that aggregate in excess of a billion dollars among

our group.

     Our claims are liquidated and, therefore, there's no basis

to put them under the purview of what's being asked here either

under 502(c) or under the withdrawal of the reference or

28 U.S.C. 157.  So we don't think that there's a basis for

Your Honor to do what they're asking.

     It's not clear to us the purpose for which they're asking

notwithstanding what's been said here today.  I don't think

that there is any need for this for purposes of moving forward

with confirmation; and I think if you ask the debtor if

Your Honor declined to estimate as requested whether they'd be

able to go forward with confirmation, I think the answer is

certainly yes, and that's another basis to say that 502 is not

applicable because it's not necessary and it will avoid a delay

to the administration of the case.

1          Thank you.

2          **THE COURT:**  That's an interesting question.

3          Mr. Orsini, you know, the insurance companies, the

4   subrogation people, who, as I understand it, are getting

5   $11 billion of the fee in cash and they're not getting a stock

6   component, they're getting straight cash, they didn't come to

7   me and ask me to enter or approve their estimation.  So why are

8   you in a different position?

9          **MR. ORSINI:**  Well, the primary reason for that,

10  Your Honor, is the settlement agreement with the subros and the

11  order approving that settlement agreement didn't require

12  estimation the same way that it's required for the tort

13  victims.  So that's the mechanical reason.

14          But the policy reason behind that or the legal reason

15  behind that is because when we settled with the subrogation

16  plaintiffs, it wasn't only a settlement that established what

17  would be distributed to them as part of a plan of

18  reorganization, it actually, by virtue of the Court's order

19  approving that settlement, created an allowed claim in a

20  liquidated amount of $11 billion, which the Bankruptcy Court

21  has full authority to do notwithstanding the withdrawal of the

22  reference.

23          And so the answer is, with respect to the subrogation

24  plaintiffs, we don't need an estimated amount because under the

25  settlement agreement, their claim has already been allowed at

1  $11 billion subject to a small number of conditions and
2  circumstances that I think everybody on this line, whether
3  they're on the screen or not, hopes never come to pass.  But
4  there are some circumstances in which that allowed claim would
5  go away, but that's the fundamental difference.
6      We don't have an allowed claim as declared by the
7  Bankruptcy Court with respect to the fire victims.  We do with
8  respect to the subrogation insurers, and ultimately because of
9  the withdrawal of the reference, as I said before, we
10 absolutely need the order estimating the fire victim amounts in
11 order to move to confirmation of plan of reorganization.
12     And just on this point because I think it relates to one
13 thing Mr. Mintz said, you know, it is absolutely incorrect to
14 say that the withdrawal of the reference did not include
15 property claims.  It 1,000 percent did, otherwise the subros
16 wouldn't have been here.
17     But the ultimate question is right now what sort of claims
18 held by these different groups.  The subros have their allowed
19 claim of $11 billion.  That is all we need for confirmation of
20 the plan with respect to their items.
21     With respect to the fire victims because of the withdrawal
22 of the reference, because of the Bankruptcy versus Article III
23 issues associated with some of their claims, we need for the
24 plan confirmation process an estimated amount.
25         THE COURT:  All right.  Anybody else on the victim

1    side would like to say anything?

2                    (No response.)

3           **THE COURT:**  Okay.  Someone -- I'm sorry, I apologize,

4    and I can't remember who -- someone suggested leading up to the

5    motion hearing in late May weekly conferences.  We've done that

6    before I think in this case.  Who suggested that?  Is there

7    someone on the phone here that did that?

8         Ah, Ms. Cabraser, yes.  Thank you.

9           **MS. CABRASER:**  I think there certainly were others, or

10   at least I think there were, but I would join them in

11   suggesting that.  This Court has done that before.  There are a

12   number of uncertainties and contingencies as we wait for the

13   vote, and there may be some uncertainties after that.  So I

14   think a case management under the limited withdrawal would be

15   promoted if Your Honor was able to do that.

16          **THE COURT:**  Okay.  I'm open to the idea.  I do it

17   actually quite frequently.  In this case, Ms. Cabraser, what

18   would be some of the things that might be necessary to talk

19   about every week?

20          **MS. CABRASER:**  Your Honor, it may not be necessary to

21   do it weekly.  Biweekly might be sufficient.  For example, a

22   next status conference on May 1st or thereabouts we'll know

23   more, I think, about how the vote is going by then.  You have a

24   hearing before you later in May, and it may well be that there

25   are -- if the plan is confirmed, it may well be that there are

1  post-confirmation matters that you may want to take up with

2  Judge Montali or separately.

3      This is a mass tort settlement as well as a bankruptcy

4  proceeding.  As you've noted, there are special procedures for

5  mass tort proceedings in bankruptcy and some of them would

6  involve post-confirmation matters.  We don't know what those

7  are yet.  We don't know the Bankruptcy Court's view and we

8  don't know your view, but I think it would be a good thing if

9  the parties could keep you informed of their respective

10  positions on these as they develop.

11      **THE COURT:**  Okay.  I'm persuaded I think that's a good

12  idea.  We can always cancel.  It will be by Zoom so obviously

13  no one will be traveling.

14      So I will -- I'll do the -- what is today?  Thursday?

15  I'll do probably the same time the first Thursday after

16  May 1st.  All right?

17      And if you-all agree among -- you know, before we get

18  there that we don't need to have a call, that's fine.  Just let

19  me know, and we'll take it off calendar, but let's at least

20  reserve the time and we can cancel if we need to.

21      Mr. Orsini.

22      **MR. ORSINI:**  Your Honor, if I may, the first Thursday

23  after May 1st is May 7th.  The deadline for the vote is

24  May 15th.  I think for everybody's sake it would be most

25  productive for us actually to be right on that deadline to have

1    a status conference because that's when we'll know the most.

2        These things, like many votes, tend to come in right at

3    the wire so I would just propose, for the sake of efficiency

4    and to make sure we can do the most that we need to, that we

5    either do it on May 15th or right after that, early the

6    following week, which still gives us a couple of weeks before

7    the hearing.

8        **THE COURT:**  Let me just -- so on that, how are people

9    voting?  Is it in something they're mailing in or is it online?

10       **MR. ORSINI:**  I think it's primarily mailing in, but I

11   believe there also may be an opportunity to do online.  And in

12   fact I see Mr. Bennett nodding.  So there is an opportunity to

13   vote online through the Prime Clerk site.  They are the

14   administrators of the notice program.  If I've messed that up,

15   Mr. Bennett or Mr. Karotkin can correct me.

16       **THE COURT:**  Mr. Singleton.

17       **MR. SINGLETON:**  Thank you, Your Honor.

18       Yes, the Prime Clerk process requests that people vote

19   electronically so that is the majority of the voting.  There is

20   an option to mail in but most of the voting is done

21   electronically so I would concur with Mr. Orsini's statement.

22   I think if we came in on May 15th or shortly thereafter, we

23   would know within a very small margin of error what the vote is

24   going to be.

25       **THE COURT:**  Let's see, I'm looking offline here

1   because I've got to check the names.  Oh, Mr. Karotkin.

2        **MR. KAROTKIN:**  Yes, sir.  Just to add to what

3   Mr. Singleton said, May 15th is a voting deadline in the

4   evening.  So just for the sake of practicality, I would suggest

5   a day or two after that because then we'll have better

6   information from Prime Clerk on the actual voting.

7        **THE COURT:**  Okay.  Mr. Mintz.

8        **MR. MINTZ:**  I would just add, Your Honor, it's also

9   the deadline for objections to confirmation so that may not be

10  the best day for those claimants who may be filing objections

11  to confirmation.

12       **THE COURT:**  Okay.  Mr. Julian.

13       **MR. JULIAN:**  Yes, Your Honor.  I think it would be a

14  good idea to set a status conference for April 30.  I would say

15  it's unlikely that we would end up using that, but I think it

16  would be good to have it on calendar inasmuch as the debtors

17  are saying they might be -- let's leave it at that, April 30,

18  and I do agree with counsel that shortly after the May 15 but

19  before the May 21 hearing it would be good to have another

20  status conference.

21       **THE COURT:**  All right.  I don't want to wait an entire

22  month.  I think we should have something in between.  I think

23  Mr. Julian is right.

24      So let's set -- I'll set something on April 30th or within

25  a day of that.  Again, if you don't want to do it and you-all

1   agree, just let me know.  It's easy to cancel.  Then I'll have

2   you back let's do Friday -- what day of the week is the 15th?

3   Is that a Friday?

4           **MR. JULIAN:**  Friday.

5           **MR. ORSINI:**  I believe it is, Your Honor.  I'm just

6   pulling it up.

7           **THE COURT:**  Let's do that following Monday.

8           **MR. ORSINI:**  The 18th.

9           **THE COURT:**  I guess that's the 18th.

10          **MR. ORSINI:**  Yes, Your Honor, May 18th.

11          **THE COURT:**  Let's do the following Monday at 2:00 p.m.

12   I will take care of all the calendaring in terms of invitations

13   of course.  So we'll count on April 30th within a day of that,

14   and then May 18th, and that basically takes us up to the eve of

15   the motion hearing with me anyway so that should be enough.

16       Okay.  Anything else anybody would like to raise today?

17                        (No response.)

18          **THE COURT:**  No?  Great.  Thank you so much.  This went

19   very well and I will see you soon.  Thank you.

20          **MS. CABRASER:**  Thank you, Your Honor.

21          **MR. ORSINI:**  Thank you, Your Honor.

22          **ALL:**  Thank you.

23              (Proceedings adjourned at 2:32 p.m.)

24

25

<u>**CERTIFICATE OF REPORTER**</u>

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:   Friday, April 17, 2020


_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR
U.S. Court Reporter