UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>PG&E CORPORATION<br><br>    -and-<br><br>PACIFIC GAS AND ELECTRIC COMPANY,<br><br>    Debtors. | Case No. 3:19-cv-05257-JD<br><br>**ORDER TERMINATING ESTIMATION PROCEEDINGS** |

These proceedings were instituted to estimate unliquidated claims against PG&E arising from devastating wildfires across Northern California in 2015, 2017, and 2018. The fires caused over one hundred deaths, destroyed homes and buildings, and severely burned vast tracts of land. They inflicted untold suffering on tens of thousands of California residents. The fire victims hold claims for wrongful death, personal injury, property damage, emotional distress, and punitive damages.

The bankruptcy reference was withdrawn in part to allow for an estimation of the value of these claims pursuant to 11 U.S.C. § 502(c). Dkt. No. 2. Section 502(c) permits an estimation of the probable value of unliquidated or contingent claims when a more precise determination through the normal course of litigation and trial would "unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). As this plain language indicates, the estimation process is intended to put an approximate valuation on uncertain claims as promptly as possible within the bounds of fairness and reasonableness. To that end, the Court has "broad discretion" over the methods and procedures to be used. *In re Corey*, 892 F.2d 829, 834 (9th Cir. 1989).

The need for an expedited estimation was particularly acute in this case to avoid further delays in compensating the fire victims, who in many cases have already waited much too long for relief. In addition, California enacted AB 1054 in July 2019 as an "urgency bill" to establish mitigation measures for future fires. To participate in a multi-billion dollar fund created by AB 1054 for victims of public utility fires, PG&E must complete its restructuring by June 30, 2020.

Consequently, the Court's mandate was to determine "an overall estimate" of the value of the victims' claims "without undue delay" and "in a speedy fashion." Dkt. No. 39 at 8:8-12. The Court filed an initial organizing order and set a two-week evidentiary hearing for February 2020. Dkt. No. 112. The Court and the parties extensively discussed the best methods of estimating the value of the victims' claims fairly and efficiently at the hearing. The discussion coalesced on the use of settlements PG&E had agreed to in prior fires and other disasters as benchmarks for the wrongful death, personal injury, and property damages claims. *See* Dkt. No. 62; Dkt. No. 39 at 31:22-34:14, 49:23-25; Dkt. No. 107 at 16:22-19:16. The parties agreed that the settlements would provide good guidelines for valuing the current claims.

In December 2019, the Official Committee of Tort Claimants ("TCC"), which represents the fire victims in the bankruptcy proceedings, and PG&E jointly advised the Court that they had reached a settlement "resolving all individual fire claims at issue." Dkt. No. 264 at 1. They agreed on the establishment of a trust in the amount of $13.5 billion for the claims, and the assignment of certain causes of action to the trust.

Because the settlement put a specific valuation of $13.5 billion on the outstanding claims, the TCC and PG&E agreed that these proceedings should be terminated. At a hearing on December 17, 2019, counsel for PG&E advised the Court that "we will no longer need to have the estimation proceedings." Dkt. No. 271 at 4:13-14. Counsel for the TCC agreed. *Id*. at 5:23. The Court proposed that even if the settlement were not approved by the bankruptcy court, it effectively mooted the need for an estimation because the parties had determined a concrete value of the claims. *Id*. at 6:21-23. Counsel for the TCC said "[t]hat's the way we would view it," *id*. at 6:24, and that "[i]t's an estimate we can certainly live with and is important to live with," *id*. at 7:13-14. Counsel for PG&E agreed that there was no reason "not to close up shop" and

terminate the estimation. *Id*. at 9:15-22. The Court adjourned the February 2020 hearing *sine die*. The bankruptcy court approved the settlement agreement on December 19, 2019. Dkt. No. 275.

That was the last word in this matter until March 20, 2020, when PG&E filed a motion for an order "adopting" the $13.5 billion as "the estimated amount of the Fire Victim Claims for all purposes" in the bankruptcy. Dkt. No. 286 at 1. This was a surprising development after PG&E's assurances at the December 2019 hearing that the estimation was concluded and that no further action was required. The motion provoked a number of responses. Some parties saw it as an opportunity to criticize the fact that approximately 50% of the $13.5 billion trust would be funded by PG&E stock. *See, e.g.*, Dkt. No. 306 at 3-4. This was contrasted unfavorably to PG&E's all-cash settlement of $11 billion with the insurance companies in the Subrogation Claim Holders group. *See* Dkt. No. 295 at 1; Dkt. No. 306 at 2-3. Other parties filed statements expressing the belief that they had liquidated claims that were not within the scope of the settlement. *See, e.g.*, Dkt. No. 299 at 7-9; Dkt. No. 301 at 1-2; Dkt. No. 303 at 1.

The Court was concerned that "adopting" the settlement amount would be inconsistent with Section 502(c) and akin to rubberstamping a done deal without any meaningful review. At a hearing on April 16, 2020, the Court advised the parties that since the claims had effectively been liquidated, the need for an estimation had been relieved. Dkt. No. 333 at 11:4-16; 14:8-19. The estimation was not a forum to review or approve the amount settled upon -- that was reserved for the bankruptcy court, which approved it. To make sure that the case could be safely closed, the Court expressly called for any party to identify any contingent or unliquidated claims that remained to be estimated. Dkt. No. 364. No one submitted a response or indicated the need for any additional estimation work to be done.

PG&E subsequently withdrew its motion. Dkt. No. 378 at 10. At the Court's request, the TCC and PG&E filed a joint statement detailing the arms-length negotiation of the settlement agreement, and the evidence that was used in connection with that. *Id*. at 4-10. The statement indicates that the $13.5 billion agreement was reached through hard bargaining based on a panoply of data, analysis, and expert opinion. *Id*.

1   Consequently, the Court concludes that the estimation proceedings should be terminated.
2   The settlement liquidated the claims withdrawn for estimation.  This proceeding is closed.
3   **IT IS SO ORDERED.**
4   Dated: June 9, 2020

JAMES DONATO
United States District Judge